Thomas A. GIBBS, Mildred F. Gibbs, His Wife, John W. Schaper, Leona T. Schaper, His Wife, John C. Bodine and Louise E. Bodine, His Wife, Plaintiffs-Respondents,

v.

Robert A. CASS and Helen Cass, His Wife, Defendants-Appellants.

No. 32893.

St. Louis Court of Appeals.

Missouri.

June 14, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 4, 1968.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for defendants-appellants.

Green, Hennings, Henry & Arnold, St. Louis, for plaintiffs-respondents.

RUDDY, Judge.

This is a suit in equity to enjoin the alleged violation of a restrictive covenant prohibiting the resubdivision of a lot owned by defendants. Defendants in their answer deny the applicability of the restrictive covenant to their proposed action and plead affirmative defenses of waiver and abandonment of the restrictive covenant and change in the character and condition, since the adoption of the restrictive covenant, of the neighborhood within which the properties owned by plaintiffs and defendants is situated. Injunctive relief was granted plaintiffs and defendants appealed.

Plaintiffs brought this action as property owners in the Heather Acres Subdivision and additionally, Thomas A. Gibbs, John W. Schaper and John C. Bodine brought it as Trustees of said subdivision. Most of the material facts have been agreed to by the parties and are contained in a stipulation signed by the attorneys for the respective parties and filed in the trial court. Other facts were supplied by the witnesses for the respective parties. We observe no significant disagreement between the parties as to the pertinent facts.

The Glen Oaks Corporation was the owner of a large tract of land and at some time prior to August 11, 1950 it caused said tract of land to be subdivided into lots. On the aforesaid date said Glen Oaks Corporation caused a plat, showing said property as it was subdivided, to be recorded in the office of the Recorder of Deeds for St. Louis County, Missouri. A reproduction of said plat as filed (except as noted hereinafter) is inserted here in reduced form.

The boundaries of said tract are shown by the outlined borders and the number of lots platted in the original subdivision was 33. The number of each lot as originally platted is shown on the plat in boldfaced numerals. The plat also shows the amount of acreage contained in each lot and the lot in controversy sought to be resubdivided is No. 23. The shaded or lined portion of the plat shows the original lots that were resubdivided, prior to the effort on the part of the defendants to resubdivide their lot No. 23. Also included in the shaded or lined portion is lot 23. Shown also in the lined portion are the new numbers (in the white spaces in light-faced numerals) assigned to the newly created lots, together with their boundaries, after the resubdivision of original lots 4, 32 and 33. Ten of the lots as originally platted contained one acre each. Eleven of the lots contained between one and one and one-half acres each. Four of the lots contained between one and one-half and two acres each. One lot (No. 29) contained 2.35 acres. Six of the lots (Nos. 22, 23, 30, 31, 32 and 33) as originally platted contained between three and four acres each and one lot, namely, lot No. 4 contained approximately sixteen+ acres.

The subdivision was to be known as Heather Acres and was to be a single family residential area and has been developed as such. On the same day the subdivision plat was recorded there was also recorded a Declaration of Restrictions for Heather Acres Subdivision and every lot and parcel in the subdivision that was sold by the developer subsequent to the recordation of the Declaration of Restrictions was sold subject to the restrictions contained in said declaration. Among the restrictions imposed on the lots was the following: "No lot may be resubdivided and no building shall be erected on less than one acre and the minimum width of each lot at the building line shall be at least 100 feet." All of the lots were sold by the developer intact as platted in the original subdivision plan except those mentioned hereinafter. These lots in the course of their sales were resubdivided as hereinafter shown. In August of 1950 the west 60 feet of lot 32 and the east 60 feet of lot 33 were sold to one purchaser. This had the effect of resubdividing lots 32 and 33. On September 21, 1950 the west 120 feet of lot 33 was sold and on December 11, 1950 the east 120 feet of lot 32 was sold. Each of these resubdivided portions of lots 32 and 33 were sold to different purchasers. In the early part of 1953 4.534 acres of lot 4, immediately north of lots 32 and 33 as platted, were sold by the developer to another development as a portion of another subdivision adjoining the Heather Acres Subdivision. These 4.534 acres of lot 4 became a part of the Signal Hill Subdivision. In 1960 C. A. Borchelt, owner of lot 24, purchased 3.901 acres of lot 4 and in 1965 he purchased two acres from the developer of lot 4. These two purchases formed the triangular shape parcel fronting on Lemp Road on the plat and on the rear lot line of lots 24, 25, 26, 27 and part of 28. In 1954 the developer transferred the remaining portion of lot 4 to another subdivision adjoining the Heather Acres Subdivision. This other subdivision was known as Charmwood. It appears from the plat that a part of the Charmwood Subdivision purchased from the developer of Heather Acres Subdivision has been subdivided into lots. There were four separate sales of portions of lot 4, each requiring a resubdivision of said lot. December 14, 1950 lot 22 was sold by the developer and in 1962 the record owner of that lot sold one-half of the lot which had the effect of resubdividing lot 22. It is the purpose of the defendants to resubdivide lot 23, which as originally platted contained 3.13 acres. In the resubdivision as planned by defendants one lot will be 1.05 acres and two lots will be 1.04 acres each. Defendants' present home will be on the triangular shaped lot shown on the plat. It is their plan to build a new home on one of the lots and to sell the third lot and their present home. The proposed resubdivision of lot 23 by the defendants was submitted to the Planning

Commission of the City of Kirkwood and received its approval. All of the Heather Acres Subdivision is zoned as one acre single family dwelling units and each of the subdivisions adjoining it are all zoned residential.

Plaintiffs are the owners of the following lots and acreage: Gibbs, lot 6, 1 acre; Schaper, lot 7, 1 acre and Bodine, part of lot 33, 2 acres+. Two of plaintiffs' witnesses are owners of lots 7 and 26, each lot containing one acre and the other witness owns lot 3, containing 1.05 acres. All of the plaintiffs and their witnesses were aware of the restrictions at the time each purchased their respective lot. Plaintiffs and their witnesses at the time of the purchases of their respective lots did not have actual knowledge of the resubdivision of lots 4, 32 and 33; however, plaintiffs and all but one of their witnesses had actual knowledge of the resubdivision of lot 22. One of plaintiffs' witnesses testified that the Killebrew house had been built on resubdivided lot 22 before he purchased his home. All of the plaintiffs and plaintiffs' witnesses were aware that Mr. Borchelt, owner of lot 24, had purchased a part of lot 4; however, none of the plaintiffs or their witnesses who knew that lot 22 was going to be resubdivided made any attempt to prevent the resubdivision of lot 22. In fact, the record shows that no one, whether a party to this suit or a witness or a former lot owner took any action to prevent the resubdivision of lots 4, 22, 32 and 33. The first action taken by any present or former lot owners to prevent a resubdivision of lots was that taken in this action by the plaintiffs who brought this action in their behalf and in behalf of a number of lot owners who had attended a meeting of the Heather Acres Association and had objected to the resubdivision of defendants' lot. However, some of the lot owners, who were witnesses for defendants, favored a resubdivision of defendants' lot 23.

In an effort to justify the resubdivision of lot 4 plaintiffs and their witnesses testified that the topography of this lot was very poor and that a deep valley with a stream running through it, with heavy brush and woods, traverses the lot. They testified that in the summer time the stream is practically dry and it forms a small stream during the wet weather. The course of the stream and valley is depicted on the plat by a thin irregular line that begins in the upper portion of the triangular lots described as purchased by Borchelt; the stream and valley being designated at its beginning with the letter "B" and winding its way through Borchelt's property leaving it at the northwest corner of lot 26 and then continuing through lots 27, 28, 29, 30, 31 and 32. The west end of the stream and valley is indicated on the plat as "A". Plaintiffs and these witnesses admitted that homes were built in the Charmwood Subdivision on the portion that previously was part of lot 4 and that these homes could be seen from their lots when there were no leaves on the trees in the winter time but could not be seen in the summer time because of the foliage.

The principal reasons given by plaintiffs and their witnesses for objecting to this proposed resubdivision by defendants of lot 23 were: that the resubdivision would deteriorate the value of the surrounding property; that, as one witness said, he purchased because of the spaciousness of the subdivision and did not think there would be a house within 20 feet of his own house; and, that in the resubdivision, defendants' house would be on a "triangular-pie shaped lot," which witness thought was normally less expensive in a subdivision than a rectangular plot. However, J. W. Schaper, one of the plaintiffs, testified that he understood each of the three lots proposed in the resubdivision would be about the size of his own lot and that they would be comparable to all the lots on the east end of Heather Acres Subdivision.

At a meeting of the Heather Acres Association held January 16, 1966, at which ten to fifteen persons were present, a majority of those present voted to protest the resubdivision of lot 23. Subsequently, the

secretary of the association and another met with Mr. Cass, one of the defendants, and informed him of the action of the majority of those present at the aforesaid meeting and asked Mr. Cass to reconsider the proposed resubdivision of his lot 23. Mr. Cass informed them that he would not reconsider the matter.

Defendant, Robert Cass, served as a Trustee of the subdivision in 1953 or 1954 and was elected in 1962 to serve a three year term ending 1965. He was aware of the several resubdivisions of lot 4, but said he was not aware of the resubdivisions of lots 32 and 33. He was aware of the purchases made by Mr. Borchelt of acreage in lot 4. He said he was not a Trustee at the time of the resubdivision of lots 4, 32 or 33. He was aware of the resubdivision of lot 22 and was a Trustee at that time. While he was a Trustee no one objected to him about the resubdivision of lot 22. He was in favor of the resubdivision of said lot because the then owner did not take care of it and permitted it to grow up in weeds.

Defendants' witnesses were owners of lots 22a, 27, 28, 32 and 33. All of them were in favor of the resubdivision of defendants' lot 23, except the owner of lot 27 who said he would prefer to see it divided in two lots instead of three. William G. Spencer, one of the witnesses, who was owner of lot 28, said he was in favor of the resubdivision of lot 23, stating, " * * I would rather see homes over there than just weeds, because I live directly across from Lot 23." Most of these witnesses and owners of lots were not aware of the resubdivision of lots 4, 32 or 33 until recently; however, they were aware of the resubdivision of lot 22 but had no objection to the resubdivision of said lot. These witnesses thought that the resubdivision of lot 23 would not devalue the surrounding property.

Defendants contend the trial court has erred in failure to find that there has been an abandonment and waiver of the restriction in question by the original developer, the lot owners and plaintiffs and in failure to find that the subdivision has undergone a change in character since the original platting and imposition of the restriction and as an ancillary point contend that the proposed resubdivision by them is totally compatible with the development of the subdivision as a whole and further, that plaintiffs did not prove that there would be any depreciation in their property values or that there was any value to the maintenance of the restriction in its original form.

In the trial court and in this court defendants do not question the meaning, construction or effect of the restrictive covenant in question and the case was tried on the theory that the restrictive covenant as originally enacted prohibited the resubdivision of any of the original lots of the Heather Acres Subdivision no matter how large or small the lot. We, therefore, confine our discussion to the points relied on by defendants.

■■■■ Plaintiffs and defendants have cited numerous cases and authorities in support of their respective positions; all of which we have read, but we hasten to point out that the cases when read present such a wide difference in facts that, in equity, but few rules can be generally applied, and, ordinarily, each case must be determined on its own facts. Eichelsbach v. Harding, Mo. App., 309 S.W.2d 681, 685. There is no hard and fast rule as to what constitutes abandonment and waiver and change of condition. However, certain fundamental rules do pervade and form the foundation and support of all of the decided cases. The law favors the free and untrammeled use of real property. Restrictions in conveyances on the fee are regarded unfavorably, and are therefore strictly construed. Hall v. Koehler, 347 Mo. 658, 148 S.W.2d 489, 494; Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W. 2d 911, 913, 81 A.L.R. 1039. While the law favors the free and untrammeled use of real property, yet restrictions thereon can-

not be and are not to be disregarded. Proetz v. Central Dist. of Christian & Missionary Alliance, Mo.App., 191 S.W.2d 273, 277; Scharer v. Panther, 127 Mo.App. 433, 105 S.W. 668, 669. However, injunctive relief will be denied where the restriction would seem to have become of no value whatever, and it would be unreasonable and oppressive to enforce it against defendants, when all corresponding benefit has been taken away from them by the action of others, when to so enforce it would destroy the beneficial use of their property, and confer no substantial benefit on other property owners or the plaintiffs. Scharer v. Panther, supra; Ewertson v. Gerstenberg, 186 Ill. 344, 57 N.E. 1051, 1055, 57 L.R.A. 310. As said in 4 A.L.R.2d 1116, when discussing changes of condition, " * * * courts of equity in passing upon cases of this character, grant or withhold injunctive relief depending upon the accomplishment of an equitable result in the light of all the circumstances surrounding the particular case, and grant or withhold affirmative relief depending upon whether the restrictive covenant remains of substantial benefit to the dominant estate or whether its purpose has been defeated by a radical change in the character of the neighborhood." If any doubts exist as to the enforcement of the restriction they must be resolved in favor of the natural rights and use of the property and against the restriction thereon. As said in Hall v. Koehler, supra (quoting from 14 Am.Jur. p. 64, § 388), " 'The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial value to the complainant's property, it can form no ground for equitable relief.' " 148 S.W.2d 489, 492. On the other hand where the restrictive covenant continues to serve a useful purpose and is of beneficial value it will be enforced in a proper case in courts of equity upon equitable grounds in favor of or against the party designed to be benefited or burdened thereby. Scharer v. Panther, supra, l.c. 669. Also, equity will enjoin the violation of restrictive covenants irrespective of the amount of damage which would result from a breach, and even though there be no substantial monetary damage. Matthews v. First Christian Church of St. Louis, 355 Mo. 627, 197 S.W. 2d 617, l.c. 619; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W.2d 545, 554; Barnes v. Anchor Temple Ass'n., Mo.App., 369 S.W.2d 893, 900. Where the defense of changed conditions is asserted the burden of proof rests on the defendant to prove (1) the radical change in condition; (2) that as a result enforcement of the restriction will work undue hardship on him; (3) and will be of no substantial benefit to the plaintiff. Unless defendant sustains this burden of proving changed condition injunctive relief will be granted. Rombauer v. Compton Heights Christian Church, supra, l.c. 554. On the other hand if the evidence shows that a radical change has taken place in the whole neighborhood such as defeats the purpose of the restriction and renders its enforcement inequitable and oppressive, equity will not enforce it. This is on the theory that the changed conditions forbid equitable intervention. Mathews Real Estate Co. v. National Printing & Engraving Co., supra, l.c. 915. The same is true when it appears that the restriction inserted in the deed has, since its insertion, been abandoned by those in whose favor the restrictive covenant was executed and who have since its insertion acquiesced in its violation. Scharer v. Panther, supra, l.c. 669. However, occasional and temporary violations by lot owners of a restrictive covenant are not sufficient as a matter of law to warrant a finding of a waiver or abandonment of the right to enforce the restriction. Matthews v. First Christian Church of St. Louis, supra, l.c. 620. The rule is as we said in Eichelsbach v. Harding, supra, l.c. 686: " * * * Receiving universal recognition is the principle that where, * * * the restrictions apply to an entire subdivision, and are part of an over-all scheme designed for the benefit of all property owners in the restricted area,

violations of the restrictions must be so general as to indicate an intention or purpose on the part of those residing in the subdivision to abandon the plan or scheme intended to be maintained by force of the restrictions. * * *"

Keeping in mind the above rules we initially discuss whether there has been an abandonment and waiver of that part of the restriction set out hereinbefore which provides that, "No lot may be resubdivided * * *." Mindful that the restriction also prohibits building a residence on less than one acre we note there were only eight lots as originally platted, namely, lots 4, 22, 23, 29, 30, 31, 32 and 33, that were capable of being resubdivided into one or more lots of at least one acre each. The balance (25) of the lots were less than two acres each and were incapable of being resubdivided without violating the restriction providing a minimun of one acre for each residence. Four of the eight lots that were capable of resubdivision had been resubdivided prior to defendants' effort to resubdivide lot 23 without any protest on the part of the then lot owners. This constituted one-half of the lots capable of being resubdivided; however, of greater significance, as shown on the plat set out herein, is the area these four lots heretofore resubdivided comprise. The four lots that were previously resubdivided comprise 26.07 acres and those remaining that were capable of resubdivision, including lot 23, comprised 11.60 acres. In addition, as shown by the inserted plat, the original lots heretofore resubdivided comprise between 40 and 45 percent of the total area of the subdivision as originally platted.

There were six resubdivisions of lots (4, 32 and 33) by the original developer-grantor. Three separate sales of resubdivided lots 32 and 33 were made during the year 1950 which was the very same year the restriction was recorded by the developer. Lot 4 was resubdivided by the developer on four subsequent occasions, two of which were participated in by C. A. Borchelt, present owner of lot 24. Also, it is apparent from the inserted plat that the portion of lot 4 which was sold by the developer to the Charmwood Subdivision has been resubdivided into approximately 10 lots. In addition, lot 22 was resubdivided into two lots. None of the owners of other lots at the time these resubdivisions took place took any action against these violations of the restriction. Some of the present owners resided in the subdivision at the time of the resubdivision of parts of lot 4 and of lots 22, 32 and 33. While it is true that some of the witnesses testified that they had no actual knowledge of the resubdivisions, yet the fact is that they occurred and they affected almost one-half of the entire area of the subdivision. It is clear that the acts of the developer-owner, who had imposed the restriction prohibiting resubdivision of the lots as originally platted, showed conclusively that there was an abandonment of that part of the restriction in question that prohibited resubdivision of any lots.

In view of the violations of that portion of the restrictive covenant in question by the original developer-grantor, by Borchelt and by the owner of lot 22, none of which were objected to by the residents of the subdivision, we hold that the number of violations of the portion of the restriction in question has been so numerous when considered in connection with the small number of lots that could have been within the purview of the restrictive covenant when recorded, together with a consideration of the large area involved in the violations as compared to the total area in the subdivision that there has been such an abandonment and waiver of the restriction in question as to prohibit the intervention of equity to grant injunctive relief sought by the plaintiffs.

Adverting to the contention of defendants that the subdivision has undergone a change in the character of the original platting and that the proposed resubdivision of lot 23 by defendants is totally compatible with the present development of the subdivision we observe that the only physical changes in the subdivision that have taken place since the original platting

are those that have resulted from the violations heretofore referred to.

The usual defense of changed conditions in the character of a neighborhood involves a change from residential to commercial use of property that is under a restriction limiting use to residential purposes or from the violation of some other building restriction. As we have said heretofore no hard and fast rule can be laid down as to when changed conditions may defeat the purpose of a restriction; however, where the changes are so radical as to destroy the essential object and purpose of the restrictive covenant equity will not lend its aid. We have not been referred to any case, nor have we found one that involves a change in the size of a lot following a violation of a restriction that prohibited a reduction in the size of a lot. There is no doubt that the changes made by reason of the violations of the restriction in question did produce a radical change in the western one-half of the subdivision in the size of the lots as originally platted. We think the changes in the sizes of the lots have been so radical in the western one-half of the subdivision as to destroy the essential object and purpose of the restrictive covenant in question. We think the changes in the sizes of the lots by reason of the resubdivision of the lots in question caused the character of the subdivision, particularly the western half, to change to such an extent, since the recordation of the restrictive covenant, that it would be inequitable and unjust to require the enforcement of the restriction. The size of the lots as originally planned and designed has materially changed. We see no harm that would befall plaintiffs and those they represent in failure to enforce the restriction at this time. As a matter of fact one of the plaintiffs testified that each of the three lots proposed in the resubdivision of lot 23 would be about the size of his own lot and would be comparable in size to all the lots on the east end of the subdivision. There is no evidence that plaintiffs or other lot owners in the subdivision would suffer any loss in value of their respective lots and no such loss can be foreseen by us. Thus, as we view it, no damage would befall plaintiffs by the refusal of injunctive relief.

The judgment and decree of the trial court is reversed and the cause is remanded to the circuit court with instructions to enter a judgment denying the injunction as prayed for by plaintiffs and decreeing that defendants are entitled to resubdivide lot 23 of Heather Acres Subdivision as planned.

ANDERSON, P. J., and WOLFE, J., concur.