Donald C. PLACKE, Plaintiff-Appellant,

v.

Jess C. HAGGERTY and Florence E. Haggerty, and Jess C. Haggerty, Jr., Defendants-Respondents.

No. 38662.

Missouri Court of Appeals, St. Louis District, Division Three.

Jan. 31, 1978.

Motion for Rehearing and/or Transfer Denied March 10, 1978.

Application to Transfer Denied April 10, 1978.

J. William Newbold, John G. Young, Jr., Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for plaintiff-appellant.

Richard L. Hughes, Mogab & Hughes, St. Louis, for defendants-respondents.

GUNN, Presiding Judge.

The classic dispute between neighbors over construction on property lines erupted into litigation which has reached this court on appeal. A fence built on a retaining wall bred the litigation, thereby assailing the veracity of the poet's observation that, "Good fences make good neighbors." [1]

James Haggerty, Jr., defendant in this action, inherited a dwelling house in Saint Louis Hills Estates No. 4 subdivision and undertook several remodeling projects before moving with his family into the residence. Haggerty made plans to convert the existing garage to a bedroom and erect a detached garage in the back yard. He put in a large cement patio and driveway lead-

ing to the proposed garage. These changes caused some modification of the grade in the back yard and to compensate for this, Haggerty erected a cement retaining wall running from front to back along his property line. The elevation of the wall over ground level varied with the contours of the land from seven or eight inches to about 32 inches. The wall was topped with a chain link fence. Haggerty constructed the patio and driveway so as to drain into the city storm sewers, but for surface water drainage in the back yard, he replaced an existing subsurface pipe with another of somewhat larger diameter. Whereas the old pipe discharged at or below ground level, the new pipe discharged through the retaining wall about one inch above ground level.

Haggerty's neighbor, plaintiff Donald Placke, objected to these changes. Although the chain link fence had been standing between the properties before, he claimed that the fence atop the wall made him feel as if he were in a prison camp. He claimed that discharge from the newly installed subsurface drain pipe turned his back yard in that area into a "sea of mud." He also objected to the erection of the detached garage as in violation of the trust indenture restrictive covenants governing use of the Saint Louis Hills properties. The restrictive covenants also forbade the erection of any "fence or wall" on the lot.[2] Placke sued to enjoin the construction and maintenance of the various improvements objected to, and to secure damages for the water draining onto his yard.

The trial court found that the restrictive covenant was valid and enforceable as to the garage, and permanently enjoined Hag-

---

1. *Mending Wall* by Robert Frost.

2. Paragraph 5 of the trust indenture provides:
   "No fence or wall (except ornamental fences as may be approved in writing by the Trustees) shall be erected anywhere on any of said Lots."
   Paragraph 11 of the trust indenture provides:
   "It is the intention of this Indenture that each of the Covenants and Restrictions in this Indenture contained shall attach to and run with each of the lots embraced within said

subdivision and to and with all titles, interests, encumbrances and estates in the same, and shall be binding upon every owner or occupant of such lot as fully as if expressly contained and obligatory covenants or conditions in each contract or conveyance of or concerning any lot or part thereof."
   In addition, Paragraph 15 makes provision for an individual lot owner to bring suit to enforce the trust indenture and such fact was stipulated to by the parties.

gerty from erecting a garage not connected in some fashion with the main structure. No appeal is raised against that decision. But the court found that the covenant against fences and walls had been waived by common acquiescence and was therefore unenforceable. This was based on a finding that fences were erected upon approximately fifty percent of the lots in the subdivision. The court also found that cleaning and enlarging the preexisting drain pipe could not increase the volume of water draining into Placke's yard and that Haggerty was not liable for any damages, because the drainage pattern had existed for at least twenty years.

Placke has appealed the decisions relating the retaining wall and water drainage. He claims that the decision on damages was not supported by the evidence, and that the trial court erred in deciding that the retaining wall was not a wall prohibited by the indenture, and that the condition against walls had been waived.

The standard of review in this court tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). That case declared that:

> [T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong.

*Murphy v. Carron*, 536 S.W.2d at 32. The *Murphy* standard was applied in review of an injunctive proceeding in *Carpenter-Union Hills Cemetery Ass'n v. Camp Zoe, Inc.*, 547 S.W.2d 196 (Mo.App.1977).

■ Although Placke testified that his yard had not previously been damaged by drainage from the Haggerty property, and that such damage had not ensued until after installation of the new pipe, Haggerty also put on evidence from an expert witness

that although the new pipe was somewhat larger in diameter, it did not increase the volume of flow which had existed before. The expert testified that drainage from the patio and driveway onto plaintiff's property was prevented by a concrete lip and that water poured onto those surfaces did not exit from the newly installed pipe, but disappeared, presumably into the city storm sewer system. Given the cautionary words in *Murphy*, warning against casual use of the power of reversal against lower court findings "against the weight of the evidence," we cannot say that the evidence is such as would create "a firm belief that the decree or judgment is wrong." The decree regarding the flow water is therefore affirmed in favor of Haggerty.

■ However, in its refusal to enjoin the maintenance of the retaining wall, the decree of the lower court cannot be so easily accepted. The degree of widespread nonconformance required to establish acquiescence to breach of restrictive covenants and consequent waiver of their enforceability was discussed in *Eichelsbach v. Harding*, 309 S.W.2d 681 (Mo.App.1958). That case involved erection of fences in another part of the Saint Louis Hills subdivision. There were 29 existing fences on 160 building lots when action was brought against the defendant's fence in that case, but the court held that that did not constitute a waiver. In *Gibbs v. Cass*, 431 S.W.2d 662, 670 (Mo. App.1968), the court said that enforcement of valid restrictive covenants may be denied only when non-compliance is "so general as to indicate an intention or purpose . . to abandon" the condition. The burden is on the defendant, the *Gibbs* court said, to prove (1) a radical change in conditions as they were originally set forth in the covenant, (2) that enforcement would cause undue hardship to the defendant, and (3) that enforcement would provide no benefit to the plaintiff. Otherwise the condition must be enforced even though the plaintiff has not proved any actual damage from its breach.

In this case Placke has established the validity of the indenture. The prohibition

against fences and walls was absolute, not conditioned upon approval by the trustees or others. Unless Haggerty has met the burden of proving waiver of the condition, the lower court has erroneously declared and applied the law, and maintenance of the retaining wall must be enjoined.

The parties concede that the widespread long time use of fences in the subdivision constitutes a waiver of the condition against fences, but the evidence showed only one other retaining wall existing in the subdivision.[3] Therefore, there could be no finding of waiver as to the condition against walls. The lower court could be correct only if a wall is the same as a fence or if waiver of the condition as to fences constituted a waiver as to walls as well. Neither of these propositions is so.

In *Feely v. Birenbaum*, 554 S.W.2d 432, 435 (Mo.App.1977), we said that in construing restrictive covenants against free use of land, words must be given their "ordinary and usual meaning in the connection in which they are used." Following the rule of *Feely v. Birenbaum*, supra, it cannot be said that the ordinary meaning of the word "wall" is identical with the word "fence." The very use of both words precludes such an assumption, since use of both would be redundant if such were the case. Here, there is a clear trust indenture proscription against the construction of Haggerty's wall, and no other meaning can be attached to the trust indenture other than the wall Haggerty built is absolutely interdicted. Haggerty's suggestion that the wall could be considered a fence is logically fenestrated. The wall is a wall and nothing else; all parties were consistent in referring to it as a wall, and the pictures of it as exhibits show the structure to be a wall. The obvious purpose of the restriction was to prevent construction of walls, and that purpose should not be defeated by applying some strained construction to the trust indenture. *Buoncristiani v. Randall*, 526 S.W.2d 68 (Mo. App.1975).

While the restriction against rear yard fences may have been waived, that is not the case regarding walls. Nor did the waiver of the condition against fences extend to include walls. In *Lake Development Enterprises, Inc. v. Kojetinsky*, 410 S.W.2d 361 (Mo.App.1966), the court ruled that abandonment or waiver of some conditions does not lead to a presumption that others are waived. The conditions such as to constitute waiver must exist separately as to each condition. The fact that the two conditions were expressed in a single sentence is legally immaterial.

As the condition against walls was not waived, and as a wall is not the same as a fence, the restrictive covenant against walls was valid and enforceable. Hence, the order denying enforcement must be reversed and the case remanded to the trial court with directions to proceed in accordance with this opinion.

KELLY and McMILLIAN, JJ., concur.

---

3. There are 216 lots platted in Saint Louis Hills Estates No. 4 subdivision.