G. Leland MELSON et al.,
Plaintiffs-Respondents,

v.

James J. GUILFOY et al.,
Defendants-Appellants.

No. 40497.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 1980.

Joseph H. Mueller, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Mark F. Haywood, St. Louis, for defendants-appellants.

Frederick J. Dana, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, for plaintiffs-respondents.

STEPHAN, Presiding Judge.

Plaintiffs, as trustees of Berry Road Park subdivision, in Glendale, St. Louis County, sought and obtained a mandatory injunction requiring defendants to remove a fence erected on defendants' property in the subdivision without the prior written approval of the trustees. Such approval is required by the subdivision indenture which provides in part, "No fence or outbuilding (except as may be approved in writing by the Trustees) shall be erected anywhere on any of the said lots." The trial court held that the restriction is valid and enforceable. Defendants appeal; we affirm.

Defendants, James and Mary Guilfoy, who reside at No. 18 Berry Road Park, began construction of a swimming pool in their backyard in December, 1976. In March, 1977, Mr. Guilfoy made a telephone call to plaintiff-trustee Melson in which he

advised Melson that he planned to enclose the pool with a wooden "privacy fence." Thereafter, in a letter dated March 29, 1977, from plaintiff-trustee R. K. Perry, Mr. Guilfoy was asked to submit a plan for the pool area construction for the trustees' formal approval. There followed several meetings at the Guilfoy home attended by Melson, Perry and Guilfoy. Mr. Guilfoy expressed the opinion that the indenture was invalid, and the construction work continued. By letter of April 12, 1977, Mr. Perry warned that, "Until there has been Trustee agreement of the fencing arrangement, you understand that any fence construction will be at your own risk. . . . We can only reiterate our initial reaction that a 6-foot wooden fence around a substantial portion of your back property is not consistent with the character of Berry Road Park." In May 1977, a six-foot high wooden stockade type fence was erected on defendants' property, extending from the rear corners of the Guilfoy residence in parallel lines to a point ten feet from the rear property line, where they meet a similar fence which parallels the rear of the house. The evidence clearly demonstrates that defendants did not have prior permission from the trustees to build the fence at issue and that the trustees and homeowners disapproved defendants' completed fence at a homeowners' meeting on June 29, 1977. The trial court found that there is one fence of design similar to that of defendants' on the west side of the property at No. 49 Berry Road Park.

On appeal, the defendants contend that: (1) the trial court erred in determining that plaintiffs had not abandoned or waived their right to enforce that part of the indenture pertaining to fences because the weight of the evidence showed that the plaintiffs acquiesced in a persistent and obvious violation of the indenture (the similar fence at No. 49); and, (2) the trial court erred in determining that the indenture provision pertaining to fences was enforceable because the weight of the evidence showed that there was no external standard to guide the plaintiffs in their exercise of the right of prior approval and that the right of prior approval was not reasonably exercised with respect to defendants' fence.

■ At the outset, we note that our review of the trial court's action is controlled by Rule 73.01. A decree or judgment of the trial court will be sustained on appeal "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Having examined the evidence, the trial transcript, the briefs and the applicable law, we hold that the decision of the trial court is supported by substantial evidence and is not against the weight of the evidence, and that the trial court did not erroneously declare or apply the law.[1]

Both of defendants' assignments of error focus on the fence at No. 49 Berry Road Park. Although that fence is along only one side of the property at No. 49, its design and construction are similar to the three-sided fence in the Guilfoy backyard. The evidence is equivocal at best as to whether trustee approval was obtained for the fence at No. 49. The fence was erected approximately nine years prior to the initiation of this case. No direct proof in the form of records was offered showing trustee approval of the fence at No. 49. Plaintiff-trustee Melson testified that he did not consider the fence at No. 49 to be in violation of the indenture. When queried further about this view by defendants' attorney, he responded without objection, "Because, according to the best testimony we

---

1. Defendants argue that in a suit to enforce a restrictive covenant, this court "hears the case de novo and makes its own findings as to the facts," citing *Minton v. Lichtenstein*, 487 S.W.2d 43, 46 (Mo.App.1972) and *Lake Development Enterprises, Inc. v. Kojetinsky*, 410 S.W.2d 361, 363 (Mo.App.1966). These cases do so hold. However, they antedate *Murphy v. Carron*, supra, and we follow the directive of that case that "The use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule 73.01." Id., 32.

could have from long-term residents of Berry Road Park who were living in the subdivision at the time that the fence was erected, it was placed there with Trustee approval and with the consent of the neighbors with no neighbor having objected to the presence of the fence." He also testified that because the property at No. 49 is "low lying it [the fence] has a decidedly different effect on the overall view than does a fence that is erected in on Mr. Guilfoy's lot." Defendants proceed under the assumption that no approval was obtained for the fence at No. 49 and therefore contend that a persistent and obvious violation of the indenture has existed for at least nine years. Because no trustee action was taken concerning the alleged violation, defendants theorize that the trustees have acquiesced in the violation and, as a result, have waived or relinquished their right to enforce the provision quoted above.

■ It is true, as defendants contend, that a restrictive covenant in a subdivision indenture may be waived and abandoned by a conscious acquiescence in the persistent violation of the provision. However, there are no absolute rules as to what acts (or inactivity) on the part of the landowners and trustees will effect a constructive waiver or abandonment. Each case is determined on its own facts. *Lake St. Louis Community Association v. Kamper*, 503 S.W.2d 447, 449 (Mo.App.1973); *Gibbs v. Cass*, 431 S.W.2d 662, 668 (Mo.App.1968). For example, in *Eichelsbach v. Harding*, 309 S.W.2d 681 (Mo.App.1958), the court affirmed a mandatory injunction requiring the removal of a fence erected in violation of a subdivision indenture, quite similar to the one here involved. The defendants in that case pleaded abandonment and produced evidence of twenty-nine violations of the same restriction in the one hundred sixty lot subdivision. After noting that the trustees had made efforts to achieve voluntary compliance from the violators (albeit approximately one year after the suit was filed), the court said, at page 686:

"Receiving universal recognition is the principle that where, as here, the restrictions apply to an entire subdivision, and are part of an over-all scheme designed for the benefit of all property owners in the restricted area, *violations of the restrictions must be so general as to indicate an intention or purpose on the part of those residing in the subdivision to abandon the plan or scheme intended to be maintained by force of the restrictions.* [Citations omitted.] The sufferance of violations on 29 of the 160 lots in the subdivision, does not conclusively establish or demonstrate an intention on the part of the trustees or the other lot owners to abandon the plan or scheme designed for the benefit of the whole subdivision and for the purpose of maintaining it as a first-class residential area." (Emphasis added.)

■ As noted, the evidence relating to the fence at No. 49 may or may not have constituted evidence of one other violation of the restriction in this forty-eight lot subdivision: Mr. Melson testified that his research indicated that trustee approval had been obtained for the fence at No. 49, a fact which would have been consistent with the location of the fence in a low-lying area. Moreover, there was evidence that, over the years, property owners had submitted construction proposals for approval and the trustees had enforced the restriction by denying requests for several "privacy" fences [2] which would have blocked the view across the backyards of other lots in the subdivision. This evidence not only establishes the trustees' intent to maintain and enforce the fence restriction but also reflects the desire of the property owners to have the indenture provision enforced. The trial court had ample evidence from which to conclude that the plaintiffs had not acquiesced in persistent and obvious violations of the indenture provision in question and

---

2. There are other lots in the subdivision which have swimming pools enclosed by fences as required by local ordinance, which fences have been approved by the trustees. The right of the defendants to have a fence has never been an issue, only the nature and expanse of the fence as installed.

therefore had not relinquished their right to enforce it. Cf. *Placke v. Haggerty,* 562 S.W.2d 743, 746 (Mo.App.1978).

We find no merit to defendants' second point on appeal that the fence restriction was unenforceable because the right to approve or disapprove a fence was wholly within the discretion of the trustees in that there was no "external standard" for the plaintiffs' exercise of their right of prior approval or because this right was unreasonably exercised with respect to defendants' fence.

■ Such an argument was discussed in detail in *LeBlanc v. Webster,* 483 S.W.2d 647, 650 (Mo.App.1972), in which, after examining the law of a large number of jurisdictions, the court concluded that the "majority" and the "better reasoned" rule is that no "external standards" are necessary with respect to indentures requiring prior approval where the discretion to grant or withhold is "reasonably exercised." The court continued:

> "We also conclude from the reasoning of the cases discussed that the reasonable exercise of a requirement of prior consent includes situations when there is a lack of compliance with the specific restrictions of the subdivision; second, *when the proposed building is not consistent and harmonious with the overall plan or actual construction within the subdivision* or development or when the proposed building is in conflict (creating damages) with the neighboring properties. We believe that these criteria, although perhaps not the only ones that could be considered, are sound." (Emphasis added.) Id., 650.

■ The evidence before the trial court warranted the conclusion that the covenant in question was employed in Berry Road Park to create and maintain a park-like residential community. Fences of heavy construction such as the one involved here, by their very nature tend to diminish the inherent openness of a park or park-like setting. That the trustees are vested with broad discretionary power to maintain the scheme of Berry Road Park is consistent with trustee powers in subdivisions general-

ly. In *Kuhs v. Kawelaske,* 516 S.W.2d 309, 311 (Mo.App.1974), this court ordered the entry of a mandatory injunction to remove a fence erected without prior written approval of the trustees as required by the subdivision indenture, saying:

> "Nor do we find any merit to defendants' contention that the decision on fences is left to the 'whim' of the trustees. There is no evidence that the decision was arbitrary or malicious. In the very nature of subdivision restrictions much discretion must be vested with the trustees. We find no abuse of discretion . . ."

In this case, the trial court effectively found no abuse of discretion. Nor do we.

The judgment is affirmed.

KELLY and STEWART, JJ., concur.