Frank A. FORST, et al.,
Plaintiffs/Appellants,

v.

Bernice M. BOHLMAN, et al.,
Defendants/Respondents,
Cross–Appellants,

and

Robert J. Crump, Jr., Trustee, Cross–Claim Defendant/Appellant.

Nos. 63229, 63230.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 11, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 23, 1994.

Armstrong, Teasdale, Schlafly & Davis, Timothy J. Tryniecki, St. Louis, for plaintiffs-appellants.

Greensfelder, Hemker & Gale, P.C., Gary L. Eberhardt, William J. Travis, St. Louis, for defendants-respondents, cross-appellants.

PUDLOWSKI, Judge.

The litigation leading to this appeal involves an action to quiet title to certain real property located in St. Louis County, Missouri. The trial court entered findings of fact and conclusions of law, a portion of which are the subject of this appeal and cross-appeal. We affirm in part and reverse in part.

In 1950, Isabelle Petersen and S.C. Petersen by and through Clayton Riding & Hunt Association (hereafter Association) owned a parcel of land consisting of approximately 110 acres (see diagram included herein). On April 27, 1950, the Association executed a written restriction agreement (hereafter Original Restriction) as to approximately 100 acres of the property. The first paragraph provides the two methods for amending this agreement: 1) by a simple majority vote of the then owners of the tract on the twenty-first anniversary of the agreement and on any subsequent ten year anniversary; or 2) by a vote of at least two-thirds of the then owners of the tract at any time. Paragraphs seventeen and eighteen respectively, provide for the right to enforce the restrictions and that the invalidation of one clause would not affect any of the other provisions. In addition, the Original Restriction provides for certain restrictions regarding building and

property use, the appointment of trustees (hereafter Bridle Lane Property Trustees) and for trustee approval of all building plans and sales of property.

The Original Restriction expressly excepts ten acres located in the northern portion of the original 110 acre parcel. This ten acre parcel is referred to as Clayton Country Club Subdivision (hereafter Clayton Subdivision). On May 12, 1950, the Association executed a restriction agreement which governs the affairs of Clayton Subdivision. Like the Original Restriction, this restriction provided for, among other things, trustee approval of building plans and property sales. The Original Restriction and the Clayton Subdivision restriction were both recorded in the St. Louis County Records.

On August 19, 1960, the owners of more than two-thirds of the 100 acre parcel subject to the Original Restriction executed an "Amendment to Restriction Agreement" (hereafter 1960 Amendment). The 1960 Amendment deleted paragraphs two to sixteen from the Original Restriction as applied to approximately fifty-two acres located in the southern portion of the 100 acre tract. The 1960 Amendment did not strike paragraphs one, seventeen or eighteen as contained in the Original Restriction. Portland West Subdivision was created out of the fifty-two acres and some additional property located to the east. The remaining forty-eight acres now comprises the Bridle Lane Property. When the 1960 Amendment was recorded, Edward Kreutz' company, Portland West Development Co., owned all of the property comprising Portland West Subdivision. Kreutz and other Bridle Lane Property owners approved the 1960 Amendment. Three weeks after the 1960 Amendment was recorded, Kreutz 'sent Oliver Pellom, a Bridle Lane Property Trustee, a letter which provided in part that the fifty-two acre tract was no longer affected by or subject to the Original Restriction.

Bridle Lane Property comprises sixteen lots, all of which are approximately three acres except one which is somewhat smaller, with eight lots located on each side of Bridle Lane. From June, 1990 until November, 1990, Johnson Development Co. (hereafter Johnson) entered into sales contracts to purchase approximately two of the three acres owned by each of the eight property owners located on the west side of Bridle Lane. Johnson proposes to develop the property into one acre lots similar to the one acre lots in Portland West Subdivision. Johnson has also entered into a sales contract with Robert Crump to purchase the lot (hereafter Crump Property) located in the western portion of Clayton Subdivision. The home on Crump's Property would be demolished and a road would be built to provide access to Clayton Road for the proposed development.

On April 27, 1991, the eight Bridle Lane Property owners with sales contracts and one property owner located on the east side of Bridle Lane executed a "Change of Restrictions Document" (hereafter 1991 Document). This document removed the Bridle Lane Property which is subject to Johnson's sales contracts from the Original Restriction. The owners of the fifty-two acres in Portland West Subdivision did not vote on the 1991 Document. On May 2, 1991, defendants' counsel representing five of the property owners located on the east side of Bridle Lane and one Portland West Subdivision property owner whose lot abuts the Bridle Lane Property, sent a letter to Johnson asserting that the 1991 Document was invalid.

On July 24, 1991, the Clayton Subdivision trustees adopted two resolutions regarding the Crump Property. The first resolution provides that the trustees opposed the building of a road and possible entrance monuments on Crump's Property. The second resolution provides that before the trustees would approve the sale of the Crump Property, Johnson must submit detailed plans and explain the proposed development of the property.

Plaintiffs, the eight Bridle Lane Property owners with sales contracts and Johnson, brought a quiet title action asking for a declaratory judgment that the 1991 Document was valid or in the alternative that Johnson's proposed development would not violate the Original Restriction. Clayton Subdivision trustees intervened and filed a cross-claim against Crump and Johnson asking for a declaratory judgment that the pro-

posed use and sale of the Crump Property would violate the Clayton Subdivision restriction. After this action was brought, two of the three Bridle Lane Property Trustees approved the Johnson sales.

Upon a joint stipulation of facts, exhibits, affidavits and legal memoranda the trial court entered findings of fact and conclusions of law. The following findings and conclusions are relevant for purposes of this appeal: 1) the 1960 Amendment was not ambiguous; 2) there has been no abandonment or waiver concerning voting on amendments to the Original Restriction by the owners of the fifty-two acres in Portland West Subdivision; 3) the 1991 Document is null and void because it was not ratified by two-thirds of the owners of the 100 acre tract which would include the owners of the fifty-two acres in Portland West Subdivision; 4) development as a subdivision of the Bridle Lane Property which is subject to the sale, would not violate the Original Restriction; 5) the two Bridle Lane Property Trustees who approved the sales to Johnson did not breach their fiduciary duties; 6) the provisions of the Clayton Subdivision restriction and Original Restriction which provide for trustee approval of purchasers of property are valid; 7) the Clayton Subdivision trustees may withhold their approval of the proposed sale of the Crump Property; and 8) the Clayton Subdivision restriction does not bar construction of a road, signs or entranceway and trustee approval for the proposed construction is not required. This appeal and cross-appeal followed.

Appellants, the eight Bridle Lane property owners with sales contracts, Johnson and Crump, argue the trial court erred by entering judgment declaring the 1991 Document was invalid and the Clayton Subdivision trustees could refuse to approve Johnson's purchase of the Crump Property. Respondents cross-appeal [1] arguing the trial court erred in entering judgment declaring Johnson's proposed development does not violate the Original Restriction, the two Bridle Lane Property Trustees could approve the proposed sale of the Bridle Lane Property and the Clayton Subdivision restriction does not bar the building of a road, signs or entranceway on Crump's Property.

In their first point, appellants argue the trial court erred in declaring that the appellants removal of the Bridle Lane Property, subject to sale, from the Original Restriction as provided in the 1991 Document was invalid. The court found that to amend the Original Restriction, a majority of the property owners of the 100 acre tract, which includes fifty-two acres in Portland West Subdivision, must approve any amendment to the Original Restriction. Also, because only a majority of Bridle Lane Property owners, who only own forty-eight acres, approved the 1991 Document the court found it was invalid. Appellants contend the Portland West Subdivision property owners have waived and abandoned the right to vote on amendments to the Original Restriction. In the alternative, appellants contend the 1960 Amendment was ambiguous regarding the right of the owners of the fifty-two acres in Portland West Subdivision to vote on amendments to the Original Restriction.

■ Our standard of review for the trial court's decision is that the trial court's judgment or decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. This deference is accorded to trial courts for judgments involving the construction or enforcement of restrictive covenants. *Perry v. Spavale*, 828 S.W.2d 709, 711 (Mo. App.E.D.1992).

We first address appellants' contention that the 1960 Amendment was ambiguous regarding voting rights for the owners of the fifty-two acres in Portland West Subdivision. As evidence of the alleged ambiguity, appellants offered the letter and affidavit of Edward Kreutz. Kreutz's affidavit asserted that he never intended for the 1960 Amendment to provide Portland West Subdivision property owners with voting rights on amendments to the Original Restriction. Kreutz's company, Portland West Development Co., owned all of the property comprising Portland West Subdivision when the 1960

1. All of the respondents are cross-appellants except for Betty Little and Robert Little.

Amendment was recorded. Kreutz wrote the letter three weeks after the 1960 Amendment was recorded and it provided in part that Portland West Subdivision property was no longer subject to or affected by the Original Restriction.

The rules governing construction of restrictive covenants on realty are generally the same as those to any contract. *Kauffman v. Roling*, 851 S.W.2d 789, 792 (Mo.App. W.D.1992). The primary rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to those intentions. *Marshall v. Pyramid Dev. Corp.*, 855 S.W.2d 403, 406 (Mo.App.W.D. 1993). The court will not resort to construction where the parties' intent is expressed in clear and unambiguous language because there is nothing to construe. *Id.*

The 1960 Amendment provides "[t]he parties, by this amendment, hereby cancel, annul and strike paragraphs 2 to 16, both inclusive, of said Restriction Agreement [Original Restriction], . . . in so far as said paragraphs relate to the property above described [the fifty-two acres which now in part comprise Portland West Subdivision]. . . ." Accordingly, the 1960 Amendment specifically deleted paragraphs two through sixteen as applied to the fifty-two acres but did not however delete paragraph one, which provides for procedures to amend the Original Restriction, or paragraphs seventeen or eighteen.

Testimony from an original developer in attempting to establish the intent of the parties to a covenant is not binding as a matter of law. *Blevins v. Barry–Lawrence County Ass'n for Retarded Citizens*, 707 S.W.2d 407, 408 (Mo. banc 1986). In addition, Kreutz was not the only property owner to approve the 1960 Amendment. If the contract is not ambiguous, the parties' intent shall be gathered from the contract alone. *Marshall*, 855 S.W.2d at 406. Given the express language of the 1960 Amendment, we affirm the trial court's judgment that no ambiguity exists.

In their first point, appellants also contend the Portland West Subdivision property owners have waived and abandoned their right to vote on amendments to the Original Restriction. We agree. A restrictive covenant may be waived and abandoned by a conscious acquiescence in the persistent violation of the provision. *Melson v. Guilfoy*, 595 S.W.2d 404, 406 (Mo.App.1980). There are no absolute rules as to what acts or inactivity by landowners and trustees constitutes a constructive waiver or abandonment. *Id.* Each case must be determined on its own facts. *Id.* (citations omitted). The issue of waiver and abandonment is somewhat unique in this case because the restriction at issue concerns the right to vote on amendments whereas in many Missouri cases the courts have addressed restrictions concerning specific building and property use. *e.g., Connelly v. Schafer*, 837 S.W.2d 344, 347 (Mo.App.W.D.1992); *Dierberg v. Wills*, 700 S.W.2d 461, 463 (Mo.App.1985).

Appellants submitted the affidavits of five Bridle Lane Property owners and Kreutz. Appellants also submitted the minutes of certain meetings of Bridle Lane Property owners. In his affidavit, Kreutz asserted that he served as a Portland West Subdivision trustee from 1960 until 1975 and that he continues to live in the subdivision. He also asserted that Portland West Subdivision property owners never acted or attempted to act upon any Bridle Lane Property matters including proposed amendments or modifications to the Original Restriction. In four of the five affidavits of Bridle Lane Property owners, the affiants asserted that on "numerous occasions" amendments to the Original Restriction were considered and Portland West Subdivision property owners were never involved. All five affiants asserted that at no time did any person, other than Bridle Lane Property owners, ever state they wished to be involved in any proposed amendment or change of the Original Restriction. Not all minutes of Bridle Lane Property meetings are part of the record but those provided do reflect that Portland West Subdivision property owners never had any involvement regarding amendments to the Original Restriction or in any other matters relating to the Bridle Lane Property. During an annual meeting in 1977, Bridle Lane Property owners considered changing the Original Restriction to permit an additional

building on the three acre lots. The minutes provide "[t]here was not a majority indication for a change consideration and the subject closed." No Portland West Subdivision property owners were present at this meeting. As previously discussed, the owners of the fifty-two acres did not have any involvement regarding the approval of the 1991 Document. There is nothing in the record which refutes appellants' contention that for approximately thirty-two years after 1960 the owners of the fifty-two acres in Portland West Subdivision never had any involvement regarding amendments to the Original Restriction or any matters relating to Bridle Lane Property. We note that the record does not reflect whether any amendment was ever drafted and a formal vote, such as by ballot, was ever taken. After 1960 however, paragraphs two through sixteen of the Original Restriction only applied to Bridle Lane Property and the failure of the owners of the fifty-two acres in Portland West Subdivision to ever be involved in any way regarding amendments to the Original Restriction or any Bridle Lane Property matters constitutes waiver and abandonment of the right to vote on amendments to the Original Restriction.

With regard to the waiver and abandonment issue, respondents make several contentions regarding the Kreutz letter. Respondents' contentions are based on appellants' argument that Kreutz's letter, which provided that the fifty-two acres in Portland West Subdivision were no longer subject to or affected by the Original Restriction, constituted a waiver of the voting rights. We agree with respondents that the letter did not constitute an express waiver of voting rights. The letter merely reflected Kreutz's understanding of the 1960 Amendment. As previously discussed however, the failure of the owners of the fifty-two acres in Portland West Subdivision to be in any way involved in amendments to the Original Restriction or Bridle Lane Property affairs for approximately thirty-two years is dispositive.

■ One of respondents' contentions concerning Kreutz is relevant to our waiver analysis. Respondents contend that Kreutz was unaware of the failure of the 1960

Amendment to delete all provisions, including paragraph one of the Original Restriction as it applied to the fifty-two acres in Portland West Subdivision. Waiver is the intentional relinquishment of a known right. *Greenberg v. Koslow*, 475 S.W.2d 434, 438 (Mo.App. 1971). In his deposition, Kreutz stated that although he signed the 1960 Amendment he never read, or became aware of its provisions, until 1991. He attributed the failure to delete all provisions of the Original Restriction as applied to the fifty-two acres in Portland West Subdivision to a typographical error or on a mistake of the attorneys. According to respondents, Kreutz' lack of awareness prevents his failure to act on amendments to be considered as waiver or abandonment.

■ Either actual or constructive notice will be sufficient to charge a purchaser with knowledge of restrictions imposed as part of a general plan. *Weber v. Les Petite Academies*, 548 S.W.2d 847, 852 (Mo.App. 1976).

Actual notice includes the circumstances of having the means to know the fact in question even though such means may not be employed. Whatever fairly is sufficient to put an ordinarily prudent person on inquiry constitutes notice of such facts as would be disclosed by reasonable pursuit and proper inquiry.

*Hamrick v. Herrera*, 744 S.W.2d 458, 462 (Mo.App.1987). In *Hamrick*, the evidence established that a commitment for title insurance and owner's title policy referred to the declarations of restriction at issue. The court rejected appellants claim they lacked notice of the restriction because the documents informed appellants they were burdened by the restrictions and this constituted actual notice. *Id.* at 462. Although Kreutz was not a purchaser, these principles apply because he signed the 1960 Amendment. The 1960 Amendment is clear and unambiguous. Kreutz had the means to know the fact in question and is deemed to have actual notice of the provisions of the 1960 Amendment. *See Pope v. Kirschner*, 742 S.W.2d 240, 241 (Mo.App.1987).

■ In addition, Kreutz did not serve as a Portland West Subdivision trustee after

1975 and is but one property owner in the subdivision. The fifty-two acres are divided into one acre lots and therefore has numerous owners. The Original Restriction and 1960 Amendment were both recorded in the St. Louis County Records. A purchaser is bound with constructive notice of all recorded instruments and any recital therein lying within the chain of title. *Hamrick*, 744 S.W.2d at 461 (citing § 442.390 RSMo 1986; *Basore v. Johnson*, 689 S.W.2d 103, 109 (Mo. App.1985)). The purchasers of the lots in the fifty-two acre tract, therefore, had constructive notice of the restrictions. Accordingly, we reject respondents' contention concerning relinquishment of a known right.

Respondents also contend the owners of the fifty-two acres have never taken any action which indicates an intent to waive or abandon the voting rights. Waiver or abandonment, however, may be based on inactivity on the part of land owners or trustees. *Melson*, 595 S.W.2d at 406; *Gibbs v. Cass*, 431 S.W.2d 662, 670 (Mo.App.1968). The failure to object to violations of a restriction may constitute waiver or abandonment. *Gibbs*, 431 S.W.2d at 670. In the instant case, the trustees and property owners failed to take any action or participate in any way regarding amendments to the Original Restriction or Bridle Lane Property affairs for approximately thirty-two years.

Under the facts of this case, the owners of the fifty-two acres in Portland West Subdivision waived and abandoned their right to vote on amendments to the Original Restriction. We reverse the trial court's ruling on this issue and hold that because a majority of the Bridle Lane Property owners approved the 1991 Document it is therefore valid. In their first two points, respondents argue Johnson's proposed development violates the Original Restriction and that the approval of the sale by two of the Bridle Lane Property Trustees is invalid. The 1991 Document removed the Bridle Lane Property subject to sale from the Original Restriction. We therefore need not address respondents' first two points on cross-appeal.

In their second point, appellants argue the trial court erred in declaring the Original Restriction and Clayton Subdivision restriction provisions providing for trustee approval of property purchasers is valid and, therefore, in declaring Johnson's purchase of the Crump Property must be approved by the Clayton Subdivision trustees. Appellants contend these provisions are facially invalid or invalid as applied to the Clayton Subdivision trustees' refusal to approve the Crump Property sale. Paragraph fourteen of the Original Restriction provides "[n]o part of said property shall be sold to any person, firm or corporation, nor shall same be resold unless the purchaser or purchasers are approved by the trustees hereunder." The Clayton Subdivision restriction contains a similar provision. Appellants claim the provisions are facially invalid because they constitute an unlawful restraint on alienation.

Our research has revealed no Missouri case which specifically addresses restraint of alienation as applied to a restriction which grants subdivision trustees approval of property purchasers. In addressing the restraint of alienation issue in other contexts, Missouri courts have considered the reasonableness of the restraint. *Kershner v. Hurlburt*, 277 S.W.2d 619, 623–26 (Mo.1955); *Nickels v. Cohn*, 764 S.W.2d 124, 133 (Mo. App.1989); *Stout v. Stout*, 564 S.W.2d 89, 90 (Mo.App.1978). "[N]ot every restraint on alienation is undesirable and not every restraint on alienation should be prohibited." *Kershner*, 277 S.W.2d at 624 (citations omitted). In *Kershner*, the court considered whether a pre-emption contract for realty was invalid because of its restraint on alienation. The court held "whether a particular restraint on alienation in substance on alienation like or similar to the instant one . . . is valid or invalid depends on whether or not it is reasonable or unreasonable under the particular facts and circumstances." *Id.* at 625. The provision at issue in the instant case does not restrain alienation per se but rather restrains alienation when the trustees refuse to approve a purchaser. The relevant inquiry is whether the trustees' refusal is reasonable. We affirm the trial court's finding that the provisions are valid.

In their second point, appellants also contend the Clayton Subdivision trustees' refusal to approve the Crump Property sale was

unreasonable and therefore an invalid restraint on alienation. On July 24, 1991, the Clayton Subdivision trustees adopted two resolutions regarding the Crump Property. These resolutions provide that the trustees oppose the building of a road or possible entrance monuments on Crump's Property and Johnson must submit detailed plans and explain the proposed development to the trustees before they would approve the sale. Appellants claim, however, that the trustees did not approve the sale because of Johnson's proposed use of the property. Bobbie Luber, a Clayton Subdivision trustee, asserted in her affidavit that on July 24, 1991, the trustees did consider Johnson's proposed purchase which is for the purpose of using the lot as a roadway. She stated further that the trustees unanimously adopted the resolution, "disapproving the sale of the Crump residence to Johnson Development in the absence of proper plans for use of the property in accordance with the existing subdivision restriction...." It is apparent that the basis for the trustees' refusal to approve Johnson as a purchaser was his proposed use of the property. The issue therefore is whether this basis is reasonable.

In considering this issue, we address respondents' remaining point on cross-appeal. The trial court found the Clayton Subdivision restriction does not bar the proposed construction of a roadway, signs or entranceway and that trustee approval for Johnson's proposed use is not required. We agree. In their third point, respondents argue that the Clayton Subdivision restriction provision which grants the trustees approval rights regarding auxiliary outbuildings also gives the trustees the right to approve Johnson's building of a road and entranceway. The provision provides "[t]he design and material used in the construction of all auxiliary outbuildings shall be approved by the Trustees before the same are constructed."

Restrictions upon the free use of land are not favorites of the law. *Perry*, 828 S.W.2d at 711. They are, therefore, narrowly construed and not extended to include anything not clearly expressed in the document. *Id.* Black's Law Dictionary 1101 (6th ed. 1990) defines an outbuilding as "[s]omething used in connection with a main building. A small building appurtenant to a main building, and generally separated from it; *e.g.* outhouse; storage shed." Our Supreme Court has held that "building" does not include a roadway. *Vinyard v. St. Louis County*, 399 S.W.2d 99, 106 (Mo.1966). Under the applicable definition, entrance monuments or signs would also not be considered an outbuilding. Doubts regarding application of restrictions are resolved in favor of the free use of land. *Id.* We affirm the trial court's judgment that trustee approval of Johnson's proposed use of the Crump Property is not required. The trustees' refusal to approve the Johnson purchase based on the proposed use of the property is not reasonable and therefore constitutes an invalid restraint on alienation. Because the trustees improperly refused to approve the sale, we reverse the trial court's judgment that trustee approval is required for Johnson's purchase of the Crump Property.

The trial court's judgment is affirmed in part and reversed in part.

SIMON, P.J., and GRIMM, J., concur.