**Marvin GREENBERG et al., Plaintiffs-Appellants,**

v.

**Jack E. and Delores KOSLOW, Defendants-Respondents.**

**No. 33996.**

St. Louis Court of Appeals, Missouri.

Dec. 28, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 18, 1972.

Application to Transfer Denied Feb. 22, 1972.

Shifrin, Treiman, Schermer & Gallop, William R. Kirby, St. Louis, for plaintiffs-appellants.

Lester Watson, St. Louis, for defendants-respondents.

COTTEY, Special Judge.

Plaintiffs are trustees of an incorporated subdivision in St. Louis County known as Beaver Meadows No. 2. Defendants, as husband and wife, own one of the lots. All the lots are subject to an Indenture of Restrictions adopted in 1957 to the recited end "that said subdivision may be developed and maintained as a desirable residential district." Article 8 of the Indenture provides, in essential part, "That neither the Corporation nor * * * any subsequent owners * * * of any of the said lots shall ever erect or maintain * * * on said lots any * * * structure * * * used or occupied for the purpose of business." The question is whether plaintiffs are entitled to injunctive relief against defendants for the alleged violation of that restriction, based on the following facts which are either admitted or undisputed.

Soon after defendants acquired their lot, they built their home on it, with an appurtenant swimming pool. The pool is equipped with a plastic bubble top that permits its use in inclement weather and protects it in the wintertime. It is screened by a high board fence. A cluster of floodlights accommodates it for use at night. Promptly after the construction of the pool in 1968, Mrs. Koslow opened it for the instruction of pupils, mostly children, who desired to learn or improve their skill in the technique of swimming. These she actively solicits, and regular records are kept on each. Her charge for a series of ten lessons ranges from $25.00 to $40.00 per person. For an eleven month period in 1969 she estimated her revenue from the enterprise at between $5,000 and $6,000. All receipts are deposited in a joint account and are reported in the parties' joint income tax returns. From time to time Mr. Koslow assists in cleaning the pool; but otherwise, according to his testimony, he has taken no active part in the enterprise and professes no knowledge of its details.

█ On that evidence the trial court denied injunctive relief, for reasons not spelled out for us. It is not contended that the Indenture is invalid. Its obvious purpose was "to provide for a high class exclusive residence district and to prohibit expressly the operation of a business upon the premises or the use of any part of said premises for a business purpose," precisely as was the case in Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S.W.2d 1024, 1030. Such a restriction is "reasonable and valid," and injunction is the proper remedy for its violation. Ibid., l.c., 1031. What then? Is its language ambiguous?

█ "We are mindful of the general rule relied upon by defendant(s) that restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property." Cash v. Catholic Diocese of Kansas City-St. Joseph, Mo.App., 414 S.W.2d 346, 348. But, "(t)he principle that restrictions as to the use of real estate should be strictly construed and doubts resolved in favor of the free use of property should never be applied in such a way as to defeat the plain and obvious purpose of the restriction." Jones v. Haines, Hodges & Jones Bldg. & Development Co., Mo. App., 371 S.W.2d 342, 344. And in every case in which the meaning of terms is questioned, the rule is that the language used, absent any indication "that some spe-

cial or peculiar meaning was intended," must "be given its ordinary and usual meaning." Katz Drug Co. v. Kansas City Power & Light Co., Mo.App., 303 S.W.2d 672, 680; Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S.W.2d 474, 477.

Where is there any ambiguity in the language of Article 8, judged by that standard? Is it in the word "structure?" Is it in the term "business use?" We look to both.

■ Scores of cases defining the word "structure" are reviewed in 83 C.J.S. Structure, p. 547 et seq. From them all a composite definition may be drawn and expressed in paraphrase: "A structure is * * * a production composed of parts artificially joined together according to plan and designed to accomplish a definite purpose," p. 548, which "may be below the surface of the ground as well as above it," p. 549, and may include, for example, "a tunnel and a well," p. 550; to which Bouvier adds, by way of further example, "a mine or pit." Beyond doubt, the swimming pool is a structure.

Does it serve a business use? The word "business" had many definitions, all tending to support the dictionary's generalization as "action which requires time, attention and labor; serious employment as opposed to a pastime." Sometimes the profit motive figures as a factor in the definition, sometimes not, depending on the context in which the word is used. But by all the authorities, any activity engaged in with some degree of regularity for the purpose of making money is a business. 12 C.J.S. Business, p. 761 et seq.; 1 Bouv. Law Dict., Rawle's Third Revision, p. 406; 20 Am.Jur.2d, § 194, p. 763 et seq. And any structure used in connection with such an enterprise, particularly where it is indispensable to it, is "used for the purpose of business." (By analogy, see Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127, where the giving of vocal lessons in the teacher's home was held to be a business use of the premises, in violation of a covenant restricting the use of the property to "residence purposes only.")

■ By any judgment we are able to make, the giving of swimming lessons on a regular basis to a solicited clientele at a fixed charge for profit is a use of the premises "for the purpose of business," in clear violation of Article 8 of the Indenture. And since the business is conducted on jointly owned premises for the owners' joint profit, obviously with the consent and connivance of both, responsibility for the violation rests on them both. Both must therefore be enjoined from further reptition of the breach even though, as defendants point out, no proof of "irreparable damage" from it was adduced. None was necessary. "If parties settle their rights in regard to a parcel of land by covenants, these must be observed whether their nonobservance will inflict injury or not. A plaintiff may restrain a continuous breach which is beneficial to him, and may stand on the very letter of his obligation, for a party may not make a solemn engagement, and then disregard it on the ground that no harm will result." Kenwood Land Co. v. Hancock Inv. Co., 169 Mo.App. 715, 155 S.W. 861, 864; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545, 552.

We dismiss, with comment proportioned to the frailty of the argument, the pleaded defense of waiver. That claim is based on a showing that one resident of Beaver Meadows, a contractor, has a home listing in his business name in the yellow pages of the telephone directory, and occasionally receives calls there, although customers "never * * * come to (my) home in person * * * I meet them at their home." His regular business answering service is "away over on Delmar," as is his business office. He keeps no stock or equipment at his home—"my business is outside." Only that and nothing more.

438

Judicial fantasizing, even by the most liberal examples of its current popularity, could hardly transmute that evidence into proof that the contractor made a business use of his home. But if it did, it would bridge only half the gulf that must be crossed. All authorities agree that waiver is the *intentional* relinquishment of a known right. 92 C.J.S. Waiver, p. 1041 et seq. No doubt it may be shown by proof that one for whose benefit a right exists has done or forborne to do something, "the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely on it." 92 C.J.S., supra, p. 1061; Swihart v. Missouri Farmers Mut. Tornado, Cyclone & Windstorm Ins. Co., 234 Mo.App. 998, 138 S.W.2d 9, 17. And no doubt, in line with that principle, a right may be waived by conscious acquiescence in its persistent violation. But necessarily implicit in that concept of waiver is the assumption that the violation is as well known to the holder of the right as the right itself. Intent stems from knowledge; it means *informed* purpose. A violation, however long continued in secrecy or obscurity, can no more be said to have been invited or intentionally condoned than the depredations of a thief in the night.

Here there is no showing that the trustees or any other resident of the subdivision had any knowledge at all of the contractor's activities at his home. "The burden is on him who claims a waiver to prove it." Dunn v. Pickard, Mo.App., 284 S.W.2d 6, 9. No such proof appears here.

The decree is reversed. The trial court will enter an order enjoining both defendants from any continuation of the activity complained of.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not participating.