**HOWARD WEISS, Plaintiff-Respondent,**

v.

**John E. FAYANT and Kathleen M. Fayant, Defendants-Appellants.**

**No. 11634.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 23, 1980.

John L. Walker, Phillips, McElyea, Walker & Carpenter Corp., Camdenton, for plaintiff–respondent.

William Icenogle, Icenogle, Casteel, Drover & Icenogle, Camdenton, for defendants–appellants.

PREWITT, Judge.

Plaintiff sought and received a mandatory injunction prohibiting defendants from maintaining a mobile home on real property defendants owned. Plaintiff's request for the injunction was based on a restrictive covenant prohibiting a "house trailer" or "mobile home". Defendants contend that the restrictions do not apply to their land, but if they do apply, that equitable relief should be denied plaintiff because plaintiff has "unclean hands". Defendants claim that plaintiff represented to defendants' predecessors in title that there were no restrictions on the use of the land and that defendants relied on that representation at the time they purchased the land.

Plaintiff's son, on June 28, 1974, granted an option to defendants' predecessors to purchase a portion of a tract of land that he had record title to, bordering on the Lake of the Ozarks. On the tract optioned was the Hickory Grove Resort, consisting of a grocery and liquor store, a boat dock, which sold gasoline, and 13 guest units. The restrictions were recorded August 24, 1974. Plaintiff's son conveyed all of the tract to plaintiff on May 28, 1976. Following the exercise of the option, plaintiff conveyed the resort portion to defendants' predecessors on July 26, 1976. Defendants received title to the premises on October 28, 1977. Since the restrictions have been filed, other persons, who are not parties to this action, have bought portions of the remaining tract from plaintiff and constructed houses on their portions. Plaintiff still owns a part of the property described in the restrictions. There were no mobile homes on the property described in the restrictions until defendant moved a mobile home onto their property. They put it there about three months after they purchased the property. Shortly after they purchased the property, and before they moved the mobile home on it, defendants were shown a list of restrictions by plaintiff's son. They proceeded with the mobile home because they "thought that these restrictions didn't apply" to their property.

Defendants contend that the restrictions do not apply to their property because such restrictions "are to be construed strictly against the one seeking to enforce them" and defendants' property prior to the filing of the restrictions was "devoted to commercial purposes, while the restrictions themselves, if strictly construed, are restrictions

relating to residential and not commercial property". Defendants do not now claim that the restrictions are invalid as to their property because they were executed and recorded after the option was granted to defendants' predecessors. This was one of their contentions before the trial court and was ruled against them. See *Kuhs v. Kawelaske*, 516 S.W.2d 309, 311 (Mo.App. 1974).

It is true that restrictive covenants will be strictly construed and not extended by implication and any reasonable doubt as to their meaning will be resolved in favor of free use of the land. *Brasher v. Grove*, 551 S.W.2d 302, 303 (Mo.App. 1977). These principles, however, should never be applied in such a way as to defeat the plain purpose of the restriction. Id. We construe restrictions by considering the language used in the entire instrument, not just one clause. *Pellegrini v. Fournie*, 501 S.W.2d 564, 565 (Mo.App. 1973); *Tracy v. Klausmeyer*, 305 S.W.2d 84, 89 (Mo.App. 1957).

Defendants ask us, in determining if the restrictive covenants apply, to consider that the resort was being operated at the time the restrictions were filed. Where the meaning of restrictions is in doubt the surrounding circumstances may be considered to determine intention. *Wilson v. Owen*, 261 S.W.2d 19, 23 (Mo.1953). However, where a restriction is unambiguous "it is neither necessary nor proper to inquire into the surrounding circumstances for aid in its construction." *Hickey v. Greengard*, 176 S.W.2d 661, 663 (Mo.App. 1944). Also see 26 C.J.S. Deeds § 163a, pp. 1104–1105; 20 Am.Jur.2d Covenants, § 186, p. 754.

Our examination of the "declaration of restrictions" convinces us that they were intended to apply to all property described therein, including that now owned by defendants, whether or not we consider the use of defendants' land at the time the restrictions were recorded. The declaration provided "that all of the above described land" is "subject to the provisions of these restrictions". The property of defendants admittedly was within the tract described.

All of the land was "designated as single family residential". The "residential restrictions" contained the prohibition against mobile homes. Also included there was a paragraph regarding "nonconforming preexisting use". This stated that if property was used for a purpose other than single family residential prior to the recording of the restrictions, and continued to be used as such until conveyed by the owner, it could continue to be so used until not so used for a period of 150 days, after which it could only be used as single family residential. While thus recognizing that a use other than residential might exist, the paragraph provided "that nothing contained herein shall be interpreted or construed as excepting any nonconforming preexisting use from any provision or provisions contained in these Restrictions except as hereinabove provided." No exception which would have permitted mobile homes on nonconforming property was provided in that paragraph. It applies the restrictions against mobile homes to all property included even if not residential. We believe to hold that the restrictions did not apply to defendants' property would be construing them in a way which would defeat the plain purpose of the restrictions.

Defendants next contend that plaintiff came into a court of equity "with unclean hands" because of a representation to defendants' predecessors that there were no restrictions on the use of the resort property. Defendants claim they relied on that representation when they purchased the land. Defendants' predecessors in title did not testify and defendants base their claim of misrepresentation upon a written commitment for title insurance. It contained no specific reference to the restrictions. There was no showing that defendants' predecessors were unaware of the restrictions or were not in favor of them. Defendants contend that they relied on the commitment, although it was not directed to them, and did not have the records in the recorder's office searched prior to the commitment's date but did search the records from that date. Even assuming, which we seriously doubt, that any misrepresentation

was shown, the trial judge was the trier of fact, and he did not have to believe defendants even if their testimony was uncontradicted. *Dambach v. James*, 587 S.W.2d 640, 643 (Mo.App. 1979). As no findings of fact were requested or made, we presume that the trial court found the facts in accordance with the result reached. *Alexander v. Sagehorn*, 600 S.W.2d 198, 200 (Mo.App. 1980). The trial judge would have been justified in finding that there was no conduct of plaintiff sufficient to invoke the doctrine of "unclean hands". The trial judge will be affirmed if correct on any reasonable theory supported by the evidence. *Rollins v. Schwyhart*, 587 S.W.2d 364, 368 (Mo.App. 1979).

The judgment is affirmed.

TITUS, P. J., and FLANIGAN and GREENE, JJ., concur.