Sara E. BERKLEY, et al.,
Plaintiffs-Respondents,

v.

CONWAY PARTNERSHIP, et al.,
Defendants-Appellants.

No. 49799.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 25, 1986.

Motion for Rehearing and/or Transfer
Denied April 1, 1986.

Application to Transfer Denied
May 13, 1986.

Richard Alan Cooper, St. Louis, for appellant.

Theodore H. Hellmuth, St. Louis, for respondent.

SNYDER, Judge.

Conway Partnership and Richard J. Wilhelm appeal from a trial court judgment granting the injunction sought by respondents, the owners of nine of the twelve platted lots in Ingleside, a residential subdivision in the City of Ladue in St. Louis County. The court enjoined appellants from resubdividing two lots in the subdivision to create a third lot, for the purpose of building a home on the newly created lot.

Appellants urge this court to find reversible error as a matter of law in the trial court's interpretation of a restrictive covenant and in its holding that subsequent indentures did not alter the restrictions agreement. Their points are denied and the judgment affirmed.

The parties submitted the case to the trial court on stipulated facts and exhibits which are summarily recited. On April 21, 1952, the owner of a certain tract of land in St. Louis County subdivided the parcel into twelve lots known as Ingleside Subdivision and recorded the plat in St. Louis County Records on April 10, 1953.

The plat contains a survey of the twelve lots and recites, among other things, that all of the lots in the subdivision shall be sold subject to the conditions, restrictions, covenants and agreements contained in a declaration of restrictions which was filed for record at the same time as the plat.

On the plat appears a certification from the City Clerk of Ladue that the plat of Ingleside was approved by the mayor and board of alderman of the City of Ladue by an ordinance approved April 28, 1952.

A document entitled "Ingleside Restrictions" bearing the same date as the plat was filed for record on the same day as the plat in the office of the St. Louis County Recorder of Deeds. Article six of these restrictions provided that the covenants run with the land and be binding until January 1, 1985; afterwards, the restrictions were to be automatically extended at ten year intervals unless changed by a vote of a majority of the then owners of lots.

They are still in effect. Article six also includes the following paragraph:

(a) All lots in the tract shall be known and described as residential lots. No structures shall be erected, altered, placed, or permitted to remain on any residential building lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three cars and other outbuildings incidental to residential use of the plot.

The following paragraph concludes the restriction agreement:

This Restriction Agreement is executed and certain of the restrictions herein contained are placed upon the property hereinabove described pursuant to an agreement made with the City of Ladue, as a result of which said City has rezoned said property from a "C" Residence District to a "D" Residence District, and no change or release of any of said restrictions shall be valid unless the City of Ladue agrees thereto in writing.

The City of Ladue has never agreed to any change in the questioned restriction.

Appellants planned to further subdivide Lots 11 and 12 into three lots and build another home on the newly created third lot; they argue that no language in the applicable covenants restricts the number of lots in Ingleside or prohibits the re-subdivision of any of the twelve lots as platted.

The trial court held that the restriction agreement prohibited the construction of more than one home on any of the twelve single lots in Ingleside; therefore, a further subdivision of Lots 11 and 12 would not permit the construction of another residence in Ingleside. This court agrees.

In a court-tried case upon a stipulation of facts, the only question before a reviewing court is whether the trial court drew the proper legal conclusions from those facts. *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 398–99[1] (Mo.App.1984). This court can address only the legal consequences of the stipulated facts and submitted exhibits. *Id.*

Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), governs appellate review of court-tried cases. Reversal will ensue only if there is trial court error in declaring or applying the law. *Id.*

■ Restrictive covenants are strictly construed, not extended by implication and any reasonable doubt as to their meaning will be resolved in favor of the free use of the land. *Weiss v. Fayant*, 606 S.W.2d 440, 442[1] (Mo.App.1980). These principles, however, should never be applied in such a way as to defeat the plain purpose of the restriction. *Id.* [3]. Restrictions are considered by examining the language used in the entire instrument, not just one clause. *Id.* [2]. Where the meaning of restrictions is in doubt, the surrounding circumstances may be considered to determine the intention. *Id.*

■ The primary object in construing covenants of restriction is to ascertain the intention of the parties, and this almost necessarily requires inquiry into the purpose which the parties sought to accomplish. *Phillips v. Schwartz*, 607 S.W.2d 203, 208[4] (Mo.App.1980). The clear intention of the covenantor should govern. *Newmark v. L & R Development Corp.*, 615 S.W.2d 118, 119[1] (Mo.App.1981).

■ This court has carefully reviewed the entire instrument in order to divine the covenantor's clear intention in establishing the restrictive covenants. Noted particularly was the provision in paragraph five of article six which reads:

No residence, shall be erected, altered, placed or permitted to remain on lots 4, 7, 8, 9, 10 which contains less than 26,000 cubic feet; and on lots 1, 2, 3, 5, 6, 11, 12 which contains less than 28,000 cubic feet. The number of cubic feet shall be the cubical contents of the structure starting from the bottom of the footing of the foundation, and shall include the cubical contents of the basement, first floor, second floor and roof, exclusive of garages or screened or open porches.

The set specification of cubic feet for each residence on each of twelve lots reflects the developer's intention that these be the sole lots established by his original subdivision. This paragraph, the language in the plat making the subdivision lots subject to the restrictions, and paragraph (a) of article six of the restrictions show that the original grantor placed the residential restrictions on the individual lots, intending to assure each lot owner that only a limited number of homes would ever be built in the Ingleside Subdivision. There was no error of law in interpreting the documents.

Appellants further argue that certain language in indentures applicable to the Ingleside lots which were recorded subsequent to the creation of the Ingleside Subdivision support their right as individual lot owners to further subdivide their property. This court disagrees.

The subsequent indentures pertaining to the Ingleside lots, as well as to other lots, and on which appellants rely contain the language: "If any of the above described lots or parcels of land shall be divided or subdivided, the owner or owners of each separate lot or parcel of land resulting from such subdivision, shall be deemed to constitute a membership of this association," (for purposes of road assessments). Appellants conclude that this language supports their right as lot owners in Ingleside to further subdivide their property.

The indentures to which appellants refer relate to a road easement for Conway Lane, a private road system which provides road access for a tract of roughly thirty-six acres including, but not limited to, the Ingleside Subdivision which is but a part of the larger tract. The history of the road indentures shows they deal strictly with road issues and the methods of assessment for maintenance of Conway Lane. Nothing in these indentures evidences an intention that they supersede, abrogate, or cancel the existing Ingleside restrictions originally recorded in 1953.

The judgment is affirmed.

CARL R. GAERTNER, P.J., and SMITH, J., concur.