Lloyd A. HAMRICK, and Mildred C. Hamrick, Respondents,

v.

Rick M. HERRERA and Susan Carroll Herrera, Appellants.

No. WD 39138.

Missouri Court of Appeals, Western District.

Dec. 1, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

David H. Cook, Independence, for appellants.

Russell D. Jacobson, A. Morgan Hickenlooper, Kansas City, for respondents.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

CLARK, Presiding Judge.

Appellants and respondents are the owners of adjoining lots in a Kansas City residential subdivision. On the petition of respondents, and after a bench trial, the court ordered appellants to remove a partially completed, detached structure appurtenant to their residence and also permanently enjoined appellants from erecting any similar structure. The issues on appeal are whether a declaration of restrictions in the subdivision governs appellants' use of their property and whether the local homes association is a successor to the restriction declarant under those restrictions. We answer those questions in the affirmative and therefore affirm the judgment.

The controversy in the case originated when appellants commenced building a detached structure in the side yard between their residence and the residence of respondents. The latter protested that the structure, intended as a children's playhouse, was in violation of restrictions in the subdivision prohibiting erection of outbuildings without prior consent and approval of the structure. When appellants persisted in continuing construction, respondents sought and obtained a temporary restraining order and thereafter, a preliminary in-

junction. After trial, the injunction was made permanent.

The threshold question confronting the trial court was whether the restrictions upon which respondents relied as the ground for their protest were applicable to appellants' property. To explore that subject, it is necessary to retrace the platting of the subdivision within which these properties lie and to examine the documents filed.

The residences the parties own are located in a development known as Blue Hills East. As platted by the developer, Blue Hills East, Inc., the lots front on a single street, 125th Street Terrace, which ends in a cul-de-sac. The plat of these lots was filed December 2, 1971 and, at the same time,[1] the developer filed a declaration of restrictions. Included was a restriction prohibiting outbuildings in the following language:

Section 6.

Outbuildings Prohibited. No outbuildings or other detached structure appurtenant to the residence may be erected on any of said lots without the consent in writing of BLUE HILLS EAST, INC.

Appellants acquired their property from Blue Hills East, Inc., by deed in August, 1975. The deed made no reference to restrictions in specific or general terms. A commitment for title insurance and the policy of owner's title insurance delivered to appellants did, however, show the December 2, 1971 restrictions, and an earlier declaration of restrictions filed in February, 1971, as exceptions to the fee simple ownership of appellants.

The court in its judgment ordering the permanent injunction found that the declaration of restrictions was applicable to appellants' property and that appellants were in violation of the restrictions by their attempt to erect an outbuilding. Appellants first contend that the finding was in error because appellants had no notice of the restrictions. The contention is more than a mere claim of the lack of actual notice. Appellants argue that the declaration of restrictions actually is not effective as to any lot in the subdivision because the declaration itself contained no legal description of the property to which it was applicable, it made no reference to the plat of Blue Hills East or any numbered lot and did not refer to any other document which would disclose that information.

Some history of the Blue Hills East development is appropriate. In 1969, Blue Hills Land, Ltd., acquired a substantial tract of acreage, designated at the time as Tract I and Tract II. On February 17, 1971, Blue Hills Land, Ltd., filed a declaration of restrictions which designated the west half of Tract I and two "peninsula" areas of Tract II as reserved for single family residences. The two peninsula areas were so described because they were separated from each other by projections of the Blue Hills Country Club golf course.

Blue Hills Land, Ltd., subsequently conveyed Tract II to Blue Hills East, Inc., and the latter subdivided the peninsula areas as Blue Hills East. The first plat, containing twenty-seven lots on 125th Street Terrace, was filed December 2, 1971. The second plat involving the second peninsula area was filed in March, 1977. Appellants' and respondents' properties lie within the first plat, Lots 22, 23 and 24.

The declaration of restrictions filed by Blue Hills East, Inc., supplementing the earlier restrictions filed by Blue Hills Land, Ltd., was recorded, as noted above, concurrently with the filing of the plat. It indicated the restrictions were applicable to "Blue Hills East, Unit No. 1." Appellants first argue that this language, which contains no reference to any lots and contains the term, "Unit No. 1," not appearing in the plat of Blue Hills East, is insufficient to bind subsequent owners of any lots in the Blue Hills East subdivision to the constraints of the restrictions.

 Restrictive covenants are strictly construed, not extended by implication and any reasonable doubt as to their meaning will be resolved in favor of the free use of

---

1. The recorder of deeds filing stamp on the plat reads: "1971 Dec 2 pm 2 09.8" and on the declaration of restrictions, "1971 Dec 2 pm 2 09.9."

the land. *Weiss v. Fayant,* 606 S.W.2d 440, 442 (Mo.App.1980). However these principles should never be used to defeat the plain purpose of the restriction. *Id.* Restrictions are considered by examining the language used in the entire instrument, not just one clause. *Berkley v. Conway Partnership,* 708 S.W.2d 225, 227 (Mo.App. 1986). If there is no ambiguity, there is no room for construction, and effect must be given to the plain language of the instrument under consideration. *Andrews v. Metropolitan Building Co.,* 349 Mo. 927, 933, 163 S.W.2d 1024, 1028 (1942). However, where the meaning of the restrictions is in doubt, surrounding circumstances may be considered. *Berkley,* 708 S.W.2d at 227. The court must inquire into the intentions of the parties to the agreement and ascertain the purpose which the parties sought to accomplish by executing the restrictions. *Id.; Paddock Forest Residents Association, Inc. v. Ladue Service Corp.,* 613 S.W. 2d 474, 477 (Mo.App.1981). The clear intention of the covenantor should govern. *Newmark v. L & R Development Corp.,* 615 S.W.2d 118, 119 (Mo.App.1981).

This was a court tried case and therefore the judgment must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We look, then, to determine what evidence was presented indicating the intention and purpose of Blue Hills East, Inc., in executing the declaration of restrictions at issue here.

■ The declaration of restrictions was filed sequentially with the filing of the Blue Hills East first plat and both were executed by the same grantor. At the time these documents were filed no other subdivision bearing the title Blue Hills East was in existence. The restrictions conformed to the prior restrictions applicable to Tract II as recorded by Blue Hills Land, Ltd., and furthered the purpose of developing a limited use residential area. Expert testimony established that the term, "Unit No. 1," is a clerical distinction between plats of the same root subdivision. The necessity for

such a distinction in the case of Blue Hills East is confirmed by the subsequent recording of the second Blue Hills East plat for the other peninsula area, and by reference in the restrictions filed with that plat to the subdivision known as Blue Hills East, Unit No. 1.

Irrespective of the failure in the restriction declaration to designate specifically Lots 1 through 27, Blue Hills East, as the land to which the restrictions applied, if it may be concluded that the intention of the declarant was to subject that land to the restrictions, that intention will control. The evidence summarized above was sufficient to support a finding of such intent. That was the judgment of the trial court and it did not err in so finding.

Appellants next contend that even if the restrictions are found to have been intended as restrictions upon their land, they are not bound because they had no notice of the restrictions. The point cannot be sustained because appellants were shown to have had constructive or actual notice of the restrictions, or both.

■ There was no question that the declaration of restrictions pertaining to the first plat of Blue Hills East was recorded in the manner prescribed by statute. It is established by ancient, but viable, authority that a purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within the chain of title. *Basore v. Johnson,* 689 S.W.2d 103, 109 (Mo.App.1985); § 442.390, RSMo 1986. The restrictions in issue were within appellants' chain of title, at least to the extent that they referred to a subdivision identified as Blue Hills East. That identification was subject to the deficiencies discussed in the previous section of this opinion. The evidence also showed, however, that the grantor-grantee indexes in the office of the recorder of deeds indicated that the subject restrictions applied to Lots 1 through 27, Blue Hills East, and the policy of title insurance issued to appellants showed the restrictions applicable to this property. These facts support a conclusion that the restrictions were in appellants' chain of

title and constructive notice to appellants was therefore the consequence.

Appellants argue, as they did under their first point, that deficiencies in the legal description of the land to which the restrictions were intended to apply preclude application of the doctrine of constructive notice. They do not explain why the contention is viable when the legal description was sufficient to alert both the recorder's office and the title insurance examiner to the restrictions. Assuming, however, that appellants can escape the consequences of constructive notice, the fact is they had actual notice of the restrictions long before any controversy over construction of the outbuilding erupted.

■ The evidence established that the commitment for title insurance furnished to appellants and the owner's title policy when issued both made reference to the declaration of restrictions by its filing date and document number. These documents informed the appellants that their property was burdened by these restrictions and constituted actual notice. Appellants say they did not read the commitment or the policy and therefore they did not have notice. Whether that be so or not, the means to be more fully informed were at hand. Actual notice includes the circumstance of having the means to know the fact in question even though such means may not be employed. Whatever fairly is sufficient to put an ordinarily prudent person on inquiry constitutes notice of such facts as would be disclosed by reasonable pursuit and proper inquiry. *Lamke v. Lynn*, 680 S.W.2d 285, 288 (Mo.App.1984). We reject the claim that appellants were not bound by the restrictions for want of notice.

■ The next point advanced assumes the restrictions in question did bind the lots in Blue Hills East when filed, but argues that the deed given by Blue Hills East, Inc., to appellants operated to nullify the restrictions when it conveyed title without any reference to the restrictions. Appellants say the language in the declaration of restrictions: " * * * or as set forth in the individual deeds from Blue Hills East, Inc. or from its successors or assigns," re-

served to Blue Hills East, Inc., the right to abandon the restrictions if conveyance were made without expressly subjecting the tract conveyed to the restrictions.

Restrictions are considered by examining the language used in the entire instrument, not just one clause. *Berkley*, 708 S.W.2d at 227. The entire agreement must be considered in determining the meaning of each part, and although effect should be given to every part of the agreement, if that be fairly and reasonably possible, seeming contradictions should be harmonized away to effectuate the underlying purpose of the parties as evidenced by the whole instrument. *Cook v. Tide Water Associated Oil Co.*, 281 S.W.2d 415, 419–20 (Mo.App.1955).

In the quotation from the declaration of restrictions set out above, the grantor does express an intention to reserve a right to modify the restrictions. That reservation, however, is in the context of the paragraph in which it appears and within the section of the document entitled "Definition Of Terms Used." The full paragraph reads:

> The word "lot" may mean either any lot as platted or any tract or tracts of land as conveyed, which may consist of one or more lots or part of parts of one or more lots as platted, and upon which a residence may be erected in accordance with the restrictions hereinafter set forth, *or as set forth in the individual deeds from BLUE HILLS EAST, INC. or from its successors and assigns.* A corner lot shall be deemed to be any such lot as platted or any tract or land as conveyed having more than one street contiguous to it.

(Emphasis supplied). The only reasonable construction of the above provision is that Blue Hills East, Inc., reserved the right to modify restrictions governing the definition of a lot for purposes of erecting a residence. This construction is consistent with the intent of the grantor as expressed in Section 3 of the restrictions whereby the right to reduce floor area requirements is reserved and in Section 4 where the right to modify building lines is also reserved. These reservations entitled Blue Hills East,

Inc., to provide by deeds for modification of building requirements in appropriate circumstances, not for wholesale abandonment of the entire declaration of restrictions. We decline to infer from the content of appellants' deed any such consequence.

■ Appellants next say the trial court erred in finding that the outbuilding violated the restrictions in that it was constructed without the prior approval of Blue Hills East, Inc., as the restrictions required. They argue that even if the restrictions do apply to their lot and to appellants, they are excused from the condition respecting outbuildings because Blue Hills East, Inc., ceased corporate existence in 1979 without designating a successor to function under the declaration of restrictions. The contention is that once it becomes impossible to obtain approval for an outbuilding, the restriction upon outbuildings ceases.

The purpose of the restrictions in issue was to maintain control over the use to which lots in the subdivision would be put and to maintain conformity in the type of structures built. In furtherance of the purposes described in the 1971 Declarations Of Restrictions, the owners of Lots 1 through 27 in Blue Hills East, including appellants, joined in the formation of the Blue Hills East Homes Association. The origin of the association and its purposes are set out in the following paragraphs taken from the Homes Association Declaration:

WHEREAS, all the persons subscribing their names hereto are the present owners of the lots and lands comprising the aforesaid plat and it is the purpose of said persons to create and maintain upon such lots and land and all public places in said plat a residential neighborhood possessing features of more than ordinary value; and

WHEREAS, Blue Hills Land, Ltd., and Blue Hills East, Inc. did by recorded declarations of restrictions, copies of which are attached hereto as Exhibits A and B, respectively, place restrictions on the use of such lots and land; and [attached were copies of the declarations of restrictions filed in February, 1971 and in December, 1971 mentioned earlier in this opinion]

WHEREAS, contemporaneously herewith all persons subscribing their names hereto have entered into a certain Declaration of Restrictions placing restrictions upon the use of such lots and land; and

WHEREAS, it is the desire of all persons subscribing their names hereto to provide the means of enforcing all such restrictions and achieving such purposes;

\* \* \* \* \* \*

The Association shall have the following powers and duties which it may exercise and perform whenever in its discretion it deems necessary or desirable, towit:

(1) To enforce, either in its own name or in the name of any owner within the district, any and all restrictions which have been or hereafter may be imposed upon any of the land in the district, either as originally placed thereon or as subsequently modified.

The Blue Hills East Homes Association was formed in 1977 or 1978 (the evidence was indefinite as to which year), at or about the time Blue Hills East, Inc., was terminating its business life, and following a meeting of the Blue Hills East property owners. The necessity for creating a successor to Blue Hills East, Inc., is implicit in the agreement as is the affirmation by the lot owners, including appellants, that the restrictions filed in 1971 remained viable and applicable to their properties. Appellants have not undertaken to repudiate the Homes Association Declaration or to deny that it was intended to function as a successor to Blue Hills East, Inc. Indeed, according to the evidence, appellant Susan Carroll Herrera served for a time as treasurer of the Homes Association.

It must be acknowledged that the Homes Association Declaration did not serve to impose any covenants running with the land or to bind subsequent purchasers. Where lots were titled in joint names, the declaration appears to have been signed by one spouse on behalf of the other. There was no statement indicating the legal description of the lots owned in conjunction with the signatures and no notarial acknowledgments appear. The document was not recorded, it did not qualify for

**464**

recording under § 59.330, RSMo 1986, and it therefore imparted no notice to subsequent grantees.

Despite the above, the declaration is operative as a private agreement binding upon those who subscribed to it. It was sufficient to bar appellants from now claiming that the outbuilding was not subject to prior approval by the association, failing which, the construction could not lawfully be undertaken.

We also reject appellants' claim that a failure to perpetuate the entity having approval authority for construction of outbuildings terminates the restrictive covenant against outbuildings. *Annot.,* 40 A.L. R.3d 864, 885 (1971) (citing *Schick v. Perry,* 12 Utah 2d 173, 364 P.2d 116 (1961)). The right to enforce the restrictions remains with the lot owners and only upon their concurrent approval may the restrictions be waived.

Appellants finally make the argument that the structure in issue here is not a building within the limitations of the restrictions. They do not explain why such a contention has validity under the facts in evidence. The restrictions prohibited the erection of any building or other structure without prior approval and also prohibited outbuildings. It was admitted that no approval for the playhouse was sought or granted and that the playhouse, so far as construction had progressed, was a permanent building not connected to appellants' residence. It was ten feet by twelve feet in size with a floor, wall studs, siding, doors and windows and a sheet roof covered with tar paper. The restrictions define outbuilding as an enclosed, covered structure not directly attached to the residence to which it is appurtenant. The contention that the playhouse is not a structure prohibited by the restrictions lacks even colorable merit.

The judgment is affirmed.

All concur.