**LAKE SAINT LOUIS COMMUNITY ASSOCIATION, Plaintiff-Appellant,**

v.

**RAVENWOOD PROPERTIES, LTD., et al., Defendants-Respondents.**

No. 53224.

Missouri Court of Appeals, Eastern District, Division Three.

March 15, 1988.

Edward Michael Murphy, Shifrin & Treiman, Clayton, for plaintiff-appellant.

Rollin J. Moerschel, Hannegon, Stokes, Moerschel & Weber, St. Charles, for defendants-respondents.

KAROHL, Presiding Judge.

Plaintiff, Lake Saint Louis Community Association (Community Association), a not-for-profit corporation which administers and enforces the Lake Saint Louis Indenture of Covenants and Restrictions (Covenants and Restrictions) for subdivisions in Lake Saint Louis in St. Charles County, appeals from the trial court determination that the land and lots in Raven's Pointe Subdivision [1] are subject to the Lake Saint Louis Indenture of Covenants and Restrictions. The Community Association, by its petition, averred that defendants Ravenwood Properties, Ltd. and fourteen (14) named purchasers of lots in the Raven's Pointe development were not entitled to membership in the Community Association and thus were not entitled to use the amenities until such time as the Covenants and Restrictions had been properly and validly placed upon the property at Raven's Pointe. The trial court rejected this contention and dismissed plaintiff's petition. On appeal, the Community Association maintains that the Raven's Pointe plats are not subject to the Covenants and Restrictions for Lake Saint Louis because the Covenants and Restrictions were never properly placed upon Raven's Pointe. We disagree with plaintiff's contention and affirm the trial court's order.

On June 21, 1967, the then developer and owner of the Lake Saint Louis development, Lake Saint Louis Estates Company, recorded a document entitled "Lake Saint Louis Indenture of Covenants and Restrictions" which placed certain covenants and restrictions on the original development property, Lake Saint Louis Plat No. 2, as recorded on July 7, 1967 with the St. Charles County Recorder of Deeds. The Covenants and Restrictions were designed to preserve the Lake Saint Louis development as a residential community and to enhance its aesthetics and natural beauty. While the Covenants and Restrictions imposed certain obligations upon members [2] of the Community Association, it also granted members a right and easement of enjoyment in and to the common properties, including the lake, golf course, and other amenities.

Thereafter, on March 20, 1974, pursuant to Article II Section 2 [3] of the Lake Saint

---

1. Specifically, the trial court's order and this appeal are concerned with the land and lots in Raven's Pointe Subdivision as per plats recorded in Plat Book 25, page 65 and Plat Book 25, page 66 to the extent that these lands and lots were formerly a part of the "Spitzer/Rosenbloom tract" described in a deed recorded in Book 1042, page 504 *et. seq.* in the St. Charles County Recorder's office.

2. The Covenants and Restrictions state that "every person who is a record owner of a fee or undivided fee interest in any Lot or Living Unit, which is subject by covenants of record to as-

sessment by the Association shall be a Member [of the Community Association]."

3.                           ARTICLE II
      PROPERTY SUBJECT TO THIS DECLARA-
         TION: ADDITIONS THERETO
         *      *      *      *      *      *
   *Section 2. Additions to Existing Property.* Additional lands may become subject to this Declaration in the following manner:
   (a) *Additions by the Developer.* The Developer may from time to time add to The Properties such land as is now owned or hereafter owned

Louis Indenture of Covenants and Restrictions, the owner of the Lake Saint Louis Estates Company, R.T. Crow, added property, including that which is currently in dispute, to the property already subject to the Covenants and Restrictions. At the time of this declaration the appended property remained unplatted and the proposed scheme for development by defendant Ravenwood had not been approved by the Community Association. It is for this reason, namely a contention that only platted lots or living units could be subjected to the Covenants and Restrictions, that plaintiff appeals.

Our review is limited by the dictates of Rule 73.01. The trial court judgment will be upheld unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Yalem v. Industrial Development Authority,* 700 S.W.2d 103, 104 (Mo. App.1985).

■ We also are mindful of the well-established principles pertaining to the interpretation and construction of restrictive covenants. First, restrictive covenants are narrowly construed and are not extended by implication to include anything not clearly expressed in them. *Berkley v. Conway Partnership,* 708 S.W.2d 225, 227 (Mo.App.1986). If there is substantial doubt of their meaning, such doubt should be resolved against the restriction and in favor of the free use of property. *Blevins v. Barry–Lawrence County Association,* 707 S.W.2d 407, 408 (Mo. banc 1986); *Greenberg v. Koslow,* 475 S.W.2d 434, 436 (Mo.App.1971). As a caveat, however, this principle should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. *Greenberg,* 475 S.W.2d at 436; *Weiss v. Fayant,* 606 S.W.2d 440, 442 (Mo.App. 1980).

■ Second, the rules governing the construction of contracts imposing restrictions on the use of realty are the same as

or approved for addition by the Developer provided that the land so added shall at that time

those applicable to any covenant or contract, including the rule that the clear intention of the grantor-convenantor should govern. *Newmark v. L. & R. Development Corp.,* 615 S.W.2d 118, 119 (Mo.App. 1981); *Berkley,* 708 S.W.2d at 227. Commensurate with this rule is the principle that if the meaning of terms is questioned, then the language used, absent indication that "special or peculiar" meanings were intended, must be given its plain, ordinary and usual meaning. *Greenberg,* 475 S.W. 2d at 436–37; *Brasher v. Grove,* 551 S.W. 2d 302, 303 (Mo.App.1977).

■ We now address plaintiff's contention that Raven's Pointe was improperly subjected to the Covenants and Restrictions of the Lake Saint Louis development. A review of the operative document reveals that it was clearly the covenantor-developer's intent to add properties subject to the covenants and restrictions:

> WHEREAS, Developer is the owner of the real property described in Article II of this declaration and desires to create thereon a residential community with open spaces and other common facilities; and to this end, desires to subject the real property described in Article II *together with such additions as may hereafter be made thereto to the covenants, restrictions, easements, charges and liens* ....
>
> \*   \*   \*   \*   \*   \*
>
> NOW, THEREFORE, the Developer declares that the real property described in Article II, *and such additions ... as may hereafter be made, is and shall be held ... subject to the [covenants and restrictions]* hereinafter set forth. (Our emphasis).

However, the essence of the dispute is not whether land could be added, but rather the manner, type, and characteristics of the land which was or could become bound by and subject to the Covenants and Restrictions. With regard to property additions, the document states that:

> be bound by all of the terms of this Declaration and any future modifications thereof ....

[t]he Developer *may* from time to time *add* to The Properties *such land* as is now owned or hereafter owned or approved for addition by the Developer *provided that the land so added shall at that time be bound by all of the terms of this Declaration and any future modifications thereof* ... (Our emphasis). Article II Section 2.

Plaintiff contends that the Covenants and Restrictions impose a condition precedent to property additions taking effect, to wit: the properties must be subject to all of the terms thereof *at the time the land is added.* In support of its claim, plaintiff argues that the functions of the Covenants and Restrictions (i.e. developer control of the rate and nature of the project's growth)

"could only be fulfilled if the property were platted at the time the developer placed the Covenants and Restrictions on the property because only then would the developer know: (1) the intended use of the property, i.e., a lot or living unit; (2) the dimensions and layout of each lot; and (3) the density of each subdivision."

Plaintiff concludes its argument by asserting that property could not be "bound" by "all the terms" of the Covenants and Restrictions until it was platted because throughout the document the wording of the covenants and restrictions applies only to "lots" or "living units."

We are not persuaded by plaintiff's narrow reading and interpretation of the Covenants and Restrictions. An examination of the Indenture of Covenants and Restrictions reveals that the concept of real estate is identified and used throughout the document is several different ways. Article I of the Indenture defines "The Properties" subject to the declaration as "all such existing properties, and additions thereto." The existing properties are defined in Article II Section 1 as "real property" subject to the

declaration which was recorded on July 7, 1967, as Lake Saint Louis Plat No. 2 with the St. Charles County Recorder of Deeds. "Additions" are discussed in Article II Section 2(a) as being "such *land* as is now owned or hereafter owned or approved for addition by the Developer." (Our emphasis). No mention is made in the Indenture declaration requiring either "The [existing] [p]roperties" or "additions thereto," to be *platted lots.*

We note that the initial developer, Lake St. Louis Estates Company, recorded the original Indenture of Covenants and Restrictions and this same developer affixed the additional, but not yet platted, land to the existing properties subject to the Covenants and Restriction. In the context of "additions" we find the covenantor-developer's selection of the word "land" to be of particular significance. This is an undefined term in the Covenants and Restrictions and connotes a much broader concept than a mere platted "lot"[4], or "living unit"[5], or "multi-family structure."[6] Using its "plain, ordinary and usual" meaning, *Greenberg,* 475 S.W.2d at 437, "land" is defined as "any ground, soil, or earth whatsoever regarded as the subject of ownership *and everything annexed to it* whether by nature ... or by man (as buildings ...) extending indefinitely vertically upwards and downwards." Webster's Third New International Dictionary. (Emphasis added).

The logical inference to be drawn from the declaration is that once property becomes an "addition" to the Lake Saint Louis "Properties", its development character is established and subject to the Indenture. When developed, the added land may be used only after complying with the terms of the residential development as defined in the Indenture of Covenants and Restrictions. At the time of addition, whether such land is platted or unplatted,

---

**4.** "Lot", as defined in Article I of the Indenture of Covenants and Restrictions, refers to "any plot of land shown upon any recorded subdivision map of The Properties with the exception of the Common Properties."

**5.** "Living Unit" is defined in Article I as "any portion of a building situated upon The Proper-

ties designed and intended for use and occupancy as a residence by a single family ...."

**6.** "Multi-family Structure", as defined in Article I, refers to "any building containing two or more living units under one roof."

the developer has required the land to be developed in strict compliance with all of the requirements of the Covenants and Restrictions. Failure to do so subjects the developer to all penalties outlined in the Indenture document.

On the basis of interpretation alone we find substantial evidence in the record to support the trial court's order.

■ In the alternative, the trial court could have decided this case on the basis of the affirmative defense raised by defendants wherein they claim that plaintiff should be equitably estopped from removing Raven's Pointe from application of the Lake Saint Louis Indenture of Covenants and Restrictions. We are persuaded by defendant's argument for several reasons. First, we note an unusual aspect of this case. Here, we have homeowners and developers who willingly have subjected themselves to the terms of the restrictive covenant declaration. However, it is the body charged with administration and enforcement of those covenants, the Community Association, which seeks to avoid application of the Indenture. Second, the evidence is undisputed that defendants Ravenwood and Raven's Pointe lot owners have complied with all of the terms of the declaration. The Community Association collected fees from defendants Ravenwood and Raven's Pointe lot owners for architectural review and approval of house plans; imposed and collected its required $250 platting fee for each lot in Raven's Pointe Subdivision; required and collected a $345 annual assessment fee for each lot in Raven's Pointe; required Raven's Pointe lot owners to secure Architectural Review Board approval for items such as sea walls, docks, gazebos and tie walls; demanded the removal of a privacy fence being built on a Raven's Pointe lot; and required preliminary layouts of the lots in Raven's Pointe to be submitted for Community Association approval.

■ The doctrine of equitable estoppel seeks to foreclose one from denying his own expressed or implied admissions which have in good faith and in pursuance of its purpose been accepted and relied upon by another. *Miskimen v. Kansas City Star*

*Co.,* 684 S.W.2d 394, 400 (Mo.App.1984). There are three elements essential to a claim of equitable estoppel: *first,* there must be an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon; *second,* there must be action taken by a second party on the faith of such admission, statement, or act; and *third,* an injury must result to the second party if the first party is permitted to contradict or repudiate his admission, statement, or act. *Willman v. Phelps,* 631 S.W. 2d 63, 67 (Mo.App.1982).

Liberal application of the doctrine of equitable estoppel is not favored. See, *Stenger v. Great Southern Savings & Loan Association,* 677 S.W.2d 376, 383 [12, 15] (Mo.App.1984). Rather, our courts restrict its use to only those cases in which each element clearly appears, with the burden resting on the party asserting estoppel to establish the essential facts by clear and satisfactory evidence. *Willman,* 631 S.W.2d at 67.

The particular facts and circumstances of this case furnish ample basis to support a finding that plaintiff, Community Association, is equitably estopped from asserting its position against defendants. First, the Community Association's position that Raven's Pointe is not bound by the Covenants and Restrictions and defendants are not entitled to its benefit is completely inconsistent with its previous conduct concerning Raven's Pointe developers and property owners prior to this litigation. We reiterate that over the past several years the Community Association has assessed and collected a variety of fees from all defendants and has required complete compliance to the Architectural Review Board's decisions. The Community Association's actions in the past are wholly inconsistent with the position asserted here that by reason of any act of the developer Raven's Pointe Subdivision never was, is not now, and could not in the future be bound by the Lake Saint Louis Indenture of Covenants and Restrictions.

Second, the element of reliance is satisfied by examining the actions taken by defendants throughout the development of the Raven's Pointe Subdivision. The devel-

opers of Raven's Pointe marketed and sold lots in the development on the basis that the Lake Saint Louis Indenture of Covenants and Restrictions would both benefit and burden the owners and occupants of the development. The developers paid the Community Association's required platting fees, and were forced to submit their development plans to the architectural control committee. Based upon the apparent availability of Lake Saint Louis amenities, the developers were able to sell the Raven's Pointe lots at a higher price than they otherwise could have. Moreover, purchasers paid higher premiums for Raven's Pointe lots on the similar belief that the development was a part of Lake Saint Louis. Thereafter, defendant lot owners were required by the Community Association to submit all building proposals to the Architectural Review Board and pay annual assessment fees. It is obvious that defendants purchased their lots, paid required fees, and complied with all the restrictive covenants in reliance upon the Community Association's representations and acts which seemingly assured defendants that Raven's Pointe was part of the Lake Saint Louis development.

Finally, a definite injury will result to the developer and each Raven's Pointe lot owner if this development is not subject to the Lake Saint Louis Indenture of Covenants and Restrictions. Not only will they not be allowed to enjoy the Lake Saint Louis amenities, but they also will suffer significant financial losses if unable to market and sell Raven's Pointe lots and homes as being part of the Lake Saint Louis development.

For these reasons we hold that the Lake Saint Louis Community Association cannot refuse defendants the application of the Lake Saint Louis Indenture of Covenants and Restrictions. Plaintiff's point is denied.

Judgment affirmed.

SMITH and KELLY, JJ., concur.